**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
AMTRUST BANK,

|  |  |
|---|---|
|  | **MEMORANDUM** |
|  | **AND ORDER** |
|  |  |
|  | CV 12-5958 (DRH) (AKT) |

                          Plaintiff,

                   - against -

GARY A. HORN, ESQ., LEGEND LAND
SERVICES, LLC, and NMR ADVANTAGE
ABSTRACT, LTD.,

                          Defendants.
------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Plaintiff Federal Deposit Insurance Corporation as Receiver for AmTrust ("Plaintiff" or

"the FDIC"), brings this action against Gary A. Horn, Esq. ("Defendant Horn" or "Horn"),

Legend Land Services, LLC ("Legend"), and NMR Advantage Abstract, Ltd. ("NMR")

(collectively, "Defendants"), for breach of contract, breach of fiduciary duty, attorney

malpractice, negligent misrepresentation, and negligence. *See generally* Compl. [DE 1].

Plaintiff has moved for sanctions against Defendant Horn for spoliation. DE 46.  Defendant

Horn opposes the motion.  DE 48.  The Court held oral argument on the motion and reserved

decision. *See* DE 56.  For the reasons that follow, Plaintiff's motion is GRANTED, to the extent

set forth in this Memorandum and Order.

## II.   BACKGROUND FACTS

The following facts are taken from the Complaint and the exhibits attached thereto.  In September 2008, AmTrust Bank, F.S.B. ("AmTrust"), a federally chartered savings bank, disbursed over $2.3 million dollars to fund six residential mortgage loans (the "Loans").  *See* Compl. ¶ 1.  AmTrust was placed into receivership on December 4, 2009, and the FDIC succeeded to all of AmTrust's claims.  *Id.*  As receiver, the FDIC is tasked with the obligation to recover losses incurred by AmTrust as a result of its operations, including any losses resulting to AmTrust because of loans funded by AmTrust.  *Id.* ¶ 9.

According to the Complaint, after the Loans closed, AmTrust learned that the Loans involved the use of inaccurate title commitments, unauthorized "flip" transactions,[1] unauthorized disbursements of loan funds, and falsified checks.  *Id.* ¶ 1.  AmTrust also learned that  the borrowers failed to provide cash at closing as required.  *Id.*  The Complaint alleges that the nature of these transactions was concealed from AmTrust at the time the loans closed.  *Id.*  Each of the Loans is in default and went into default shortly after the Loans were closed.  *Id.* ¶ 17.

Defendant Horn is a licensed attorney who served as AmTrust's "closing agent" for the Loans.  *See id.* ¶¶ 10-11; 18.  As closing agent, Horn signed and agreed to be bound by the terms of AmTrust's Master Closing Instructions and Supplemental Closing Instructions ("Closing Instructions").  *Id.* ¶ 11, Ex. A.  These instructions required "strict compliance" and defined the scope by which the closing agent was authorized to act on Amtrust's behalf.  *Id.* ¶¶ 22-23.  The Closing Instructions provided directives concerning, among other things, conditions that must be satisfied before closing on a loan and circumstances which require the closing agent to stop the

---

[1]     The Complaint defines a "flip" transaction as consisting of "repeated sales of a property within a short period of time, and for AmTrust's purposes, within one year or less."  Compl. ¶ 50.

transaction and contact AmTrust before proceeding.  *See id.* ¶¶ 20-29.  The FDIC alleges that, by signing the Closing Instructions and conducting closings, Horn assumed fiduciary and contractual duties to AmTrust.  *Id.* ¶ 19.

According to the Complaint, Horn failed to comply with many of the Closing Instructions' directives when he closed on the Loans.  *See generally id.* ¶¶ 40-107.  Specifically, the FDIC alleges that Horn: (i) allowed borrowers to fail to pay the required down payment or earnest money deposit;  (ii) disbursed loan funds in a manner inconsistent with HUD-1 Settlement Statements; (iii) prepared and submitted HUD-1 Settlement Statements that did not accurately reflect the actual receipts and disbursements from the closings of the Loans; (iv) disbursed Loan proceeds to entities other than the seller, or the seller's attorney, to pay off existing mortgage leans; (v) allowed the Loans to close when the seller was not the owner of record for one year or more; (vi) closed the Loans when the closing agent's family member or a family member of an employee of the closing agent was a party to the transaction; and (vii) failed to notify AmTrust before closing the Loans of conditions that violated the Closing Instructions.  *Id.* ¶¶ 110; 117, 128, 134.  The FDIC alleges that, but for Horn's conduct, AmTrust would not have funded the Loans, "all of which are now in default and severely undersecured."  *Id.* ¶ 111.

The Complaint asserts causes of action for breach of contract, breach of fiduciary duty, attorney malpractice, and negligent misrepresentation against Defendant Horn.  *Id.* ¶¶ 108-140. The Complaint also sets out a negligence claim against Legend and NMR, the entitites which served as titles agent for a number of the Loans.  *Id.* ¶¶ 12-15, 141-154.

III.   **RELEVANT PROCEDURAL HISTORY**

Plaintiff commenced this action against Defendants on December 3, 2012, and Horn filed his Answer and cross-claim against Legend and NMR on January 24, 2013. [2]  While Plaintiff and Horn were engaged in fact discovery, Plaintiff's counsel informed the Court that he intended to conduct a Rule 30(b)(6) deposition of Attorney Horn to explore a possible spoliation issue regarding Horn's failure to preserve electronic information.  *See* DE 34.  The parties thereafter submitted a briefing schedule for the instant motion for sanctions against Horn, DE 38, which the Court "so-ordered."  Elec. Order of Sept. 26, 2013.  After the motion was fully submitted, *see* DE 46-48, the Court heard oral argument and reserved decision.  *See* DE 56.

IV.   **THE PARTIES' CONTENTIONS**

Plaintiff moves for sanctions against Horn for spoliation of evidence, arguing that Defendant Horn "knowingly and willfully destroyed and discarded computers, Blackberry devices and back-up tapes, and failed to preserve electronically stored information ("ESI"), particularly e-mail communcations" related to the Loans.  Pl.'s Mem. of Law in Support of Mot. for Sanctions for Spoliation of Evidence ("Pl.'s Mem.") [DE 46-1] at 1.  Plaintiff asserts that Horn admitted during his Rule 30(b)(6) deposition that (i) he "failed to institute any litigation hold after AmTrust . . . notified him of possible malpractice claims against him" in 2009; (ii) "he has preserved and produced a total of only 3 e-mails concerning the 6 loan transactions identified in the Complaint"; (iii) "the computers, server, Blackberry devices and backup tapes that contained e-mails relating to the Subject Loans have been discarded and/or destroyed"; and

---

[2]      After Legend and NMR failed to answer or otherwise respond to the Complaint or Horn's cross-claim, Plaintiff moved for a default judgment against Legend and NMR.  DE 28. For the reasons set forth in the Report and Recommendation from this Court (which Judge Hurley adopted), Judge Hurley granted Plaintiff's motion and entered a default judgement against Legend and NMR as to liability for Plaintiff's negligence claim.  DE 63.

(iv) "there is currently no way to locate or produce those lost communications." *Id.* Plaintiff argues that it "has been irreparably prejudiced by the destruction of these e-mail communications," which Plaintiff contends are relevant to its pending claims against Horn. *Id.* Accordingly, Plaintiff seeks (i) an adverse inference against Horn on a motion for summary judgment or at trial for Horn's having deprived Plaintiff of documentary evidence that would have been favorable to Plaintiff and adverse to the interests of Horn; and (ii) an assessment against Horn for the costs and fees incurred by Plaintiff on the instant motion and in the taking of his Rule 30(b)(6) deposition. Pl.'s Notice of Mot. [DE 46].

In his opposition to the motion, Horn argues that Plaintiff has not established a *prima facie* case for spoliation that warrants the imposition of sanctions. *See* Def.'s Mem. in Opp. to Pl.'s Mot. for Sanctions for Spolition of Evidence ("Def.'s Mem.") [DE 48-6] at 1. Horn does not deny that, in 2010, he "discard[ed] his office's old computers" without attempting to preserve e-mails from computers used by his former employees. *Id.* at 1, 5. However, Horn argues that, at the time he discarded the computers, he "was not, and could not reasonably have been, on notice that any e-mails sent or received by his former employees could be relevant to potential litigation." *Id.* at 1. In particular, Horn disagrees with Plaintiff that the "pre-suit" letters AmTrust sent him in 2009 triggered his duty to preserve e-mails because those letters (i) raised "very limited" claims of malpractice, (ii) related to only four of the six Loans at issue, and (iii) sought only paper documents, which Horn turned over to Amtrust. *Id.* at 1-2. Horn further asserts that Plaintiff has not shown that the e-mails he failed to preserve (to the extent they actually existed) are relelvant to this litigation or that Plaintiff has suffered any prejudice. *Id.* at 2-3. Noting that he has produced over 1,800 documents during the course of disocery, Horn

maintains that this motion is merely an "opportunistic" attempt by Plaintiff "to gain a strategic advantage in this litigation" without proving it is entitled to the relief it seeks. *Id.* at 2.

## V.   APPLICABLE LEGAL STANDARD

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); *accord Byrnie v. Town of Cromwell*, 243 F.3d 93, 107 (2d Cir. 2001).  A court may impose sanctions against a party who spoliates evidence pursuant to Rule 37(b) of the Federal Rules of Civil Procedure as well as through the Court's inherent powers to control the judicial process and the litigation before it. *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002); *West*, 167 F.3d at 779; *Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, 783 F. Supp. 2d 736, 741 (S.D.N.Y. 2011); *Zubulake v. UBS Warburg LLC* ("*Zubulake V*"), 229 F.R.D. 422, 430 (S.D.N.Y. 2004).  In situations where sanctions are warranted, district courts have broad discretion in "crafting an appropriate sanction for spoliation."  *West*, 167 F.3d at 779; *see Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) ("The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge . . . ."); *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) ("Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses.").  The applicable sanction "should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine."  *West*, 167 F.3d 779.  Stated another way, the selected sanction should be designed to "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would

have been in absent the wrongful destruction of evidence by the opposing party." *Id.* (internal quotation marks omitted); *accord Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 162 (2d Cir. 2012).

In some instances, the spoliation of evidence "can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." *Zubulake V*, 229 F.R.D. at 430 (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).  A sanction in the form of an adverse inference instruction is, however, "an extreme sanction and should not be imposed lightly." *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 120 (S.D.N.Y. 2008); *see Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 219 (S.D.N.Y. 2003) ("*Zubulake IV*") ("In practice, an adverse inference instruction often ends litigation – it is too difficult a hurdle for the spoliator to overcome.").

A party seeking sanctions has the burden of establishing "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp.*, 306 F.3d at 107 (quoting *Byrnie*, 243 F.3d at 107-12); *accord Centrifugal Force, Inc. v. Softnet*, 83 F. Supp. 2d 736, 741 (S.D.N.Y. 2011); *Zubulake V*, 229 F.R.D. at 430.  With these principles in mind, the Court now addresses the specific circumstances of this case.

## VI.   DISCUSSION

### A.   The Destruction of ESI

As an initial matter, there appears to be no dispute that Horn destroyed certain ESI.  Horn had five computers in his firm during the period from 2008-2009, consisting of four desktops

used by Horn, paralegal Wallace Lee, assistant Sally Garcia, the receptionist, and a server used by the entire office. *See* Tr. of the Aug. 30, 2013 30(b)(6) Deposition of Gary Horn ("Horn Dep. Tr."), attached as Ex. 1 to the Decl. of Laura L. Watson ("Watson Decl.") [DE 46-2], at 32-33. Horn maintains that, due to the 2008 financial crisis, his business, which consisted almost exclusively of handling real estate matters, decreased by 90%. Aff. of Gary A Horn, Esq. ("Horn Aff.") [DE 48-5] ¶ 10. Horn was therefore forced to lay off his employees and move offices. *Id.* ¶¶ 11-12. Sally Garcia left Horn's employment in April 2009. Horn Dep. Tr. at 11-12. In early 2010, Horn ended his employment relationship with Wallace Lee. *Id.* That same year, Horn moved his firm's offices. *Id.* Horn transferred certain materials from his work computer and from the server to his new laptop computer. *Id.* at 34-35. He ultimately threw out the computers for Wallace Lee, Sally Garcia, the receptionist, and his own computer – as well as the server – in or around 2010. *Id.* at 34-35. Horn did not transfer any e-mails or other information to his new laptop from Wallace Lee's computer, Sally Garcia's computer, or the receptionist's computer. *Id.* at 35.

Horn and Wallace Lee also had Blackberry devices which they used for e-mail and electronic communications during the relevant time period. Horn Dep. Tr. at 53-54. During the Rule 30(b)(6) deposition, Horn testified that the Blackberry devices used by Lee and himself were also discarded. *Id.* at 33-34, 56-58. In discarding the devices, he made no effort to capture or preserve any of the information stored on those devices. *Id.* at 56-57.

Horn also testified that, during the relevant time period, he had a back-up data system to back up his firm's server, including back-up tapes and off-site storage. Horn Dep. Tr. at 60-62. However, these back-up tapes have also been discarded (prior to approximately 2010), and no

effort was made to preserve any information that was on the back-up tapes.  *Id.* at 63-64.

Further, Horn can no longer recapture information from the off-site storage.  *Id.*[3]

Finally, Horn testified that because the computers, Blackberry devices and back-up tapes have been destroyed and the e-mails were not preserved, there is no way to reconstruct the missing information today:

> Q:     And are you aware of any mechanism, whether it is through a device, a tape, software program that you could gain access to today, that would be able to reconstruct or capture electronic or e-mail communications or electronic documents that weren't preserved when you migrated information from the server to your laptop.
>
> A:     No.

Horn Dep. Tr. at 69.

Finally, the FDIC apparently issued an administrative subpoena to Horn on June 11, 2012, prior to initiating the instant lawsuit.  Pl.'s Mem. at 2.  The FDIC also demanded relevant ESI in a May 16, 2013 Request to Produce Documents.  *See id.* at 2-3.  In response to both the administrative subpoena and the Request for Production, Horn produced three responsive e-mails.  *See* Horn Dep. Tr. at 37, 47, 49.

In sum, both Plaintiff and Defendant agree that ESI in Horn's possession has in fact been destroyed.  The Court now turns to an examination of whether Plaintiff has met its burden to show that such desctruction merits the imposition of sanctions.

### B.     Duty to Preserve

The first element a party must show when seeking sanctions for the destruction of evidence is "that the party having control over the evidence had an obligation to preserve it at the

---

[3]     Specifically, Horn testified that he cancelled his subscription to the off-site storage company, and he assumes the information that was preserved has since been destroyed.  Horn. Dep. Tr. at 64.

9

time it was destroyed." *Chin*, 685 F.3d at 162; *Residential Funding Corp.*, 306 F.3d at 107.  The

Second Circuit has determined that "[t]he obligation to preserve evidence arises when the party

has notice that the evidence is relevant to litigation or when a party should have known that the

evidence may be relevant to future litigation." *Fujitsu*, 247 F.3d at 436 (citing *Kronisch*, 150

F.3d at 126).  Pursuant to this obligation, "anyone who anticipates being a party or is a party to a

lawsuit must not destroy unique, relevant evidence that might be useful to an adversary."

*Zubulake IV*, 220 F.R.D. at 217; *accord Curcio v. Roosevelt Union Free Sch. Dist.*, 283 F.R.D.

102, 108 (E.D.N.Y. 2012).  "In this respect, 'relevance' means relevance for purposes of

discovery, which is 'an extremely broad concept.'"  *Orbit One Commc'ns, Inc. v. Numerex*

*Corp.*, 271 F.R.D. 429, 436 (S.D.N.Y. 2010) (quoting *Condit v. Dunne*, 225 F.R.D. 100, 105

(S.D.N.Y. 2004)).  Therefore, "[w]hile a litigant is under no duty to keep or retain every

document in its possession[,] it is under a duty to preserve what it knows, or reasonably should

know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible

evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending

discovery request." *Zubulake IV*, 220 F.R.D. at 217 (internal quotations and alterations omitted);

*see Scalera v. Electrograph Sys., Inc.*, 262 F.R.D. 162, 171 (E.D.N.Y. 2009).

The duty to preserve arises, not when litigation is certain, but rather when it is

"reasonably foreseeable." *Byrnie*, 243 F.3d at 107; *see F.D.I.C. v. Malik*, No. 09 Civ. 4805,

2012 WL 1019978, at *1 n.1 (E.D.N.Y. Mar. 26, 2012) (holding that duty to preserve arose when

attorneys who allegedly destroyed documents represented the plaintiff in the underlying

transaction at issue); *In re Semrow*, No. 03 Civ. 1142, 2011 WL 1304448, at *3 (D. Conn.

Mar. 31, 2011) (holding that duty to preserve vessel arose prior to commencement of suit

because the fact that fatalities occurred should have put party on notice of future litigation); *Siani*

*v. State Univ. of New York at Farmingdale*, No. 09 Civ. 407, 2010 WL 3170664, at *6 (E.D.N.Y. Aug. 10, 2010) (holding that receipt of letter informing defendants of alleged discrimination and intent to pursue claim triggered duty to preserve).

### 1.    *The Parties' Arguments*

Plaintiff argues that Defendant Horn, as the sole attorney supervising his employees, had control of the information at issue here and an obligation to preserve it.  Pl.'s Mem. at 10 (citing Horn Dep. Tr. at 120).  Further, Plaintiff identifies two events which it claims triggered the duty to preserve.  First, Plaintiff argues that Horn's ethical obligations arose when he represented AmTrust Bank in the loan transactions in this case.  Pl.'s Mem. at 11.  Specifically, Plaintiff argues that ethical obliations binding New York attorneys require preservation of the client's documents.  *Id.*  In addition, Plaintiff maintains that Horn's duty to preserve arose in June 2009, when he received the first of four "explicit notices of potential professional negligence claims from AmTrust Bank."  *Id.*; *see* AmTrust Ltrs., attached as Ex. 3 to Watson Decl. [DE 46-2].

Defendant Horn maintains that the four letters he received from AmTrust in 2009 stated that he had violated AmTrust's closing instructions in one (and only one) specific way: by "failing to ensure the Seller was in title for one year prior to closing per the Closing Instructions."  Def.'s Mem at 3, 10 (citing Watson Decl., Ex. 3).  The content of the four letters from AmTrust are identical, other than the date of the letter and identifying information regarding the borrower and the loan.  *See* Watson Decl., Ex. 3.  Horn contends that because the letters related to this issue alone, and because AmTrust requested only copies of the disbursement logs for the transaction referenced in each letter, he had no reason to believe any e-mail communications were relevant.  Def.'s Mem. at 3, 10.  In general, Horn asserts that e-mails would not be relevant to whether a seller held title for more than one year at the time of closing,

because the only relevant documents related to this issue would be the title report and documents actually recorded. *Id.* at 11. Horn also argues that the AmTrust letters related to only four of the Loans, and, therefore, he had no duty to preserve e-mails related to the other two Loans at issue in this case. *Id.* at 10.

Moreover, in response to the letters from AmTrust, Horn (i) notified his insurance carrier as the letters directed; and (ii) copied and segregated the four files related to the closings at issue from the rest of his files. *Id.* at 4 (citing Horn Aff. ¶¶ 7-8). These documents were preserved and have been produced to Plaintiff's counsel. *Id.* Horn maintains that when he discarded the computers and Blackberries and transferred offices, he did not believe that it was necessary to search for e-mails, since (i) there would be few (if any) e-mails relating to loan closings because phone calls were the general method of communication and "e-mails were used infrequently, if at all, in connection with residential real estate closings"; and (ii) AmTrust never asked for any e-mail production. Horn Affid. ¶ 12. According to Horn, he had no ethical oblication to maintain the e-mails because "a lawyer is not required to retain every draft or scrap of paper regardless of its relevance." Def.'s Mem. at 12. In sum, based on the limited allegations in the AmTrust letters, Horn argues that he could not conclude that any e-mails would be relevant. Def.'s Mem. at 11.

Plaintiff counters that although the notices relate to specific allegations that the seller was not the owner of record for at least a year prior to closing, the notices also expressly state that AmTrust would "evaluate all legal recourse available" to it and was "without prejudice to other rights or claims the Bank may have." Pl.'s Reply Mem. in Support of Motion for Sanctions for Spoliation of Evidence ("Pl.'s Reply Mem.") [DE 47], at 3 (citing AmTrust Ltrs., Watson Decl., Ex. 3). Plaintiff also points out that the letters requested Horn's disbursement logs, which

according to Plaintiff, "relate to all of Horn's duties as closing attorney, not simply the length of time the sellers were in title."  *Id.*  Thus, Plaintiff asserts that the letters revealed that AmTrust was investigating "the entirety of Horn's conduct" as a closing attorney on the Loans.  *Id.* Plaintiff further argues that, although the 2009 AmTrust letters relate to only four of the Loans at issue, Horn was on notice that AmTrust was investigating his conduct as AmTrust's attorney, and therefore he had an obligation to preserve all documents related to those loans for which he served as attorney for AmTrust.  *Id.*  Finally, Plaintiff maintains that AmTrust sent a prior e-mail to Horn on November 20, 2008, requesting disbursement logs, disbursement checks, and copies of mortgage payoff checks relating to eight different loans, including all six Loans at issue in this litigation.  *Id.*

### 2.    *Analysis*

The Court concludes that Defendant Horn's duty to preserve arose at least by June 18, 2009, when Horn received the first of four notices from AmTrust concerning his alleged misconduct as the bank's closing attorney.[4]  The letters explicitly stated that AmTrust was considering pursuing professional negligence claims against Horn and requested that he put his professional liability insurer on notice.  *See* AmTrust Ltrs., Watson Decl., Ex 3.  The letters accused Horn of failing to ensure that the seller was in title for one year prior to closing on the four Loans, but they also directed Horn to produce his disbursement logs.  *See id.*  According to Plaintiff, these logs "evidence the amount of all of the funds Horn disbursed at closing and to whom the funds were disbursed."  Pl.'s Reply at 3.  Thus, the fact that AmTrust sought Horn's disbursement logs indicates the bank was likely investigating potential misconduct by Horn beyond what was specifically outlined in the letters.  It is also worth noting that the 2009 letters

---

[4]    The other three letter are dated August 10, 2009; September 17, 2009; and October 8, 2009, respectively.  *See* Amtrst Ltrs., Watson Decl., Ex. 3.

followed a November 20, 2008 e-mail from a "Senior Quality Control Analyst" in Amtrust's special investatigation unit, who sought Horn's disbursement logs, disbursement checks, and copies of mortgage payoff checks for all six Loans.  The Court therefore agrees with Plaintiff that, although the 2009 letters relate to only four Loans, the letters provided sufficient notice to Horn that AmTrust was investigating his conduct as the bank's closing attorney with respect to all six Loans at issue in this case.  *See Distefano v. Law Offices of Barbara H. Katsos, PC*, No. CV 11-2893, 2013 WL 1339548, at *5 (E.D.N.Y. Mar. 29, 2013) (duty to preserve arose when attorney received letter from client terminating her representation "for some reasons not yet fully defined").

Ultimately, the fact that AmTrust alerted Horn that it was investigating his alleged professional misconduct "should have raised enough of a red flag for [Horn] to undertake some precautions" with respect to preserving potentially relevant e-mails.  *Id*.  As noted above, the duty to preserve arises when litigation is "reasonably foreseeable."  *Byrnie*, 243 F.3d at 107; *see In re Vitamin C Antitrust Litig.*, No. 05–CV–453, 2013 WL 504257, at *9 (E.D.N.Y. Feb. 8, 2013) ("[T]he law is clear that the obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation, and that this obligation may arise prior to the filing of a suit if the litigation is reasonably anticipated.") (quotations omitted)); *Toussie v. Cnty. of Suffolk*, No. 01–CV–6716, 2007 WL 4565160, at *6 (E.D.N.Y. Dec. 21, 2007).  "In assessing whether litigation was reasonably foreseeable in these circumstances, the Court cannot ignore the fact that [Horn] is an attorney and should have been attuned to the prospect of litigation." *Distefano*, 2013 WL 1339548, at *5.  Although the inquiry is necessarily a fact specific one, the Court notes that several other courts have found that the duty to preserve attaches prior to the initiation of formal proceedings.  *See Malik,* No. 09-CV-4805, 2012 WL 1019978, at *1 n.1

14

(holding that duty to preserve arose when attorneys who allegedly destroyed documents represented the plaintiff in the underlying transaction at issue); *Siani v. State Univ. of New York at Farmingdale*, No. 09-CV-407, 2010 WL 3170664, at *6 (E.D.N.Y. Aug. 10, 2010) (holding that receipt of letter informing defendants of alleged discrimination and intent to pursue claim triggered duty to preserve); *Schwarz v. FedEx Kinko's Office and Print Servs., Inc.*, No. 08-CV-6486, 2009 WL 3459217, at *6 (S.D.N.Y. Oct. 27, 2009) (holding that duty to preserve evidence arose when party received letter that gave it "good reason to anticipate imminent litigation"); *Creative Res. Gr. of New Jersey, Inc. v. Creative Res. Grp*., 212 F.R.D. 94, 106 (E.D.N.Y. 2002) (concluding that the duty to preserve arose months prior to the commencement of the lawsuit when the problems that eventually led to the filing of the lawsuit first surfaced).

Moreover, while a litigant need not retain every document in its possession, litigants are under a duty to preserve evidence that may be relevant to future litigation. *Fujitsu*, 247 F.3d at 436; *Zubulake IV*, 220 F.R.D. at 217. Horn argues that he could not have concluded from the limited allegations in the 2009 AmTrust letters that e-mails from his former employees Lee and Garcia were potentially relevant. Rather, Horn asserts that the only relevant documents responsive to the AmTrust letters were the hardcopy documents from his closing files on the four Loans, which he has produced to AmTrust and Plaintiff in this action. The Court disagrees and finds that the 2009 AmTrust letters, considered in conjunction with the 2008 e-mail from the bank's special investigation unit, were sufficient to put Horn on notice that his overall conduct as closing attorney was under legal scrutiny by AmTrust and, thus, the scope of his duty to preserve went beyond paper documents in his closing files. Such a determination is not akin to holding Horn responsible for retaining every "scrap of paper regardless of its relevance," as Horn contends. Def.'s Mem. at 12. Rather, the Court finds that, even assuming that e-mail

communications are uncommon in real estate closings as Horn asserts, a reasonably prudent

attorney would still have at least searched for e-mails on his employees' devices once he

received notice that a former client was investigating his alleged professional misconduct arising

out of his handling of loan transactions.  This is particularly true here where Horn testified that

Lee regularly communicated with the parties to AmTrust loan transactions and assisted with loan

closings.  Horn Dep. Tr. 8-9, 38-40.[5]

Instead of taking this routine precaution, however, Horn completely discarded his

employees' computers and Blackberries (as well as the back-up tapes) without searching for or

taking any steps to preserve e-mails related to the Loans.  Based on the foregoing factors, the

Court concludes that Horn's destruction of ESI violated his duty to preserve potentially relevant

e-mails regarding the Loans.

Having concluded that the duty to preserve arose on or about June 18, 2009, the next step

is to determine whether the destruction of evidence occurred prior to or after that date.  Here, the

acts upon which Plaintiff bases its motion are Horn's destruction of his office computers, server,

Blackberry devices and backup tapes which contained e-mails relating to the Loans, as well as

his failure to preserve e-mail communications knowing that these items were destroyed.  During

his Rule 30(b)(6) deposition, Horn testified that the computers for Lee and Garcia, the

receptionist's computer, his own computer, and the server were thrown away in or around 2010

when Horn moved offices.  Horn Dep. Tr. at 34-35.  The Blackberry devices used by Horn and

Lee were also discarded, though Horn testified he did not recall when that occurred.  *Id.* at 56-58.

As for the back-up tapes for his firm's server, Horn stated they were discarded most likely before

he moved offices in 2010.  *Id.* at 63-64.  Although Horn has outlined a "vague" time frame for

---

[5]     As discussed later in this decision, Horn also testified that Garcia also *may have* handled
communications with persons involved in the closings.  Horn Dep. Tr. 9, 40.

the destruction of these items, "the Court need not pinpoint the exact date of the destruction for purposes of analyzing this prong of the standard test" because the Court is satisfied that the destruction occurred after Horn received the June 18, 2009 letter from AmTrust. *Distefano*, 2013 WL 1339548, at *6.

Because the Court concludes that the duty to preserve arose at least by the date of AmTrust's first letter in June 2009 — prior to the alleged destruction of e-mails — the Court does not need to address Plaintiff's argument that Horn's durty to preserve arose when he represented AmTrust in the loan transactions at issue in this case. *See* Pl.'s Mem. at 11. The Court does note, however, that the Second Circuit has found that a duty to preserve may arise at the inception of a relationship between the parties. In *Byrnie*, the Second Circuit held that in certain circumstances, "a regulation can create the requisite obligation to retain records," even where litigation involving the records is not reasonably foreseeable. *See* 243 F.3d at 109; *accord Dupee v. Klaff's, Inc.*, 462 F. Supp. 2d 244, 249 (D. Conn. 2006). In *Malik*, the court considered the holding of *Byrnie* in the context of an attorney malpractice case. 2012 WL 1019978, at *1. There, the plaintiffs claimed that their former attorneys spoliated evidence and, they argued, that the duty to preserve arose from professional responsibility rules and attorney ethics opinions requiring lawyers to preserve electronic documents relating to a representation. *Id.* Noting that the argument was unopposed, the court concluded that the defendants' duty to preserve arose when they began representing the plaintiffs in the loan transaction at issue. *Id.*

Although it is not a "regulation," the Association of the Bar of the City of New York Committee on Professional and Judicial Ethics (the "Committee") has provided guidance on a lawyer's ethical obligations to retain and to provide a client with electronic documents relating to the attorney's representation of a client. *See* Assoc. of Bar of City of N.Y. Comm. on Prof. and

Judicial Ethics, Formal Op. 2008-1 (July 2008) (*available at*

http://www2.nycbar.org/Publications/reports/show_html_new.php?rid=794).  The Committee

gave the following opinion regarding document retention:

> As is the case with paper documents, which e-mails and other
> electronic documents a lawyer has a duty to retain will depend on
> the facts and circumstances of each representation. Many e-mails
> generated during a representation are formal, carefully drafted
> communications intended to transmit information, or other
> electronic documents, necessary to effectively represent a client, or
> are otherwise documents that the client may reasonably expect the
> lawyer to preserve. These e-mails and other electronic documents
> should be retained. On the other hand, in many representations a
> lawyer will send or receive casual e-mails that fall well outside the
> guidelines in our 1986 Opinion. No ethical rule prevents a lawyer
> from deleting those e-mails.
>
> We also expect that many lawyers may retain e-mails and other
> electronic documents beyond those required to be retained under our
> 1986 Opinion. For example, some lawyers and law firms may retain
> all paper and electronic documents, including e-mails, relating in
> any way to a representation, as a measure to protect against a
> malpractice claim. Such a broad approach to document retention
> may at times be prudent, but it is not required by the Code.

*Id.* § II.  Moreover, as Plaintiffs point out, Rule 1.15 of the New York Rules of Professional

Conduct provides that a lawyer must retain certain billing and financial records for seven years

and the failure to do so may result in disciplinary action.  *See* N.Y. Rule of Professional Conduct

§ 1201.15.  The Court will not undertake an analysis of whether the material Defendant Horn

destroyed was covered by the Committee's Opinion 2008-1 since the Court has already ruled that

Horn had a duty to preserve the material at issue.

### C.    Culpable State of Mind

"Even where the preservation obligation has been breached, sanctions will only be

warranted if the party responsible for the loss had a sufficiently culpable state of mind." *In re*

*WRT Energy Sec. Litig.*, 246 F.R.D. 185, 195 (S.D.N.Y. 2007); *see Residential Funding*, 306

F.3d at 107-08.  Failures to preserve relevant evidence occur "'along a continuum of fault - ranging from innocence through the degrees of negligence to intentionally.'"  *Reilly*, 181 F.3d at 267 (quoting *Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988)).  In this Circuit, "the 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed 'knowingly, even if without intent to breach a duty to preserve it, or negligently.'"  *Residential Funding Corp.*, 306 F.3d at 108 (quoting *Byrnie*, 243 F.3d at 109) (internal alterations and emphasis omitted); *Curcio*, 283 F.R.D. at 111.

"'In the discovery context, negligence is a failure to conform to the standard of what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding."  *In re Pfizer Secs. Litig.*, 288 F.R.D. 297, 314 (S.D.N.Y. 2013) (internal quotations omitted); *accord Harkabi v. SanDisk Corp.*, 275 F.R.D. 414, 418-19 (S.D.N.Y. 2010)).  A party is negligent even if the failure "results from a pure heart and an empty head."  *In re Pfizer*, 288 F.R.D. at 314; *Curcio*, 283 F.R.D. at 111; *see Mastr Adjustable Rate Mortgages Trust 2006-OA2 v. UBS Real Estate Sec. Inc.*, 295 F.R.D. 77, 84 (S.D.N.Y. 2013), *aff'd* No. 12 CIV. 7322 HB, 2013 WL 6840282 (S.D.N.Y. Dec. 27, 2013) ("In order to 'protect the innocent litigant from the destruction of evidence by a spoliator who would otherwise assert an empty head, pure heart defense,' one who fails to preserve evidence will be sufficiently culpable even when acting with ordinary negligence.") (quoting *Orbit One*, 271 F.R.D. at 438) (alterations omitted).

"It follows that gross negligence also satisfies the culpability requirement."  *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 503 (S.D.N.Y. 2013) (citing *Chin*, 685 F.3d at 162); *see Residential Funding Corp.*, 306 F.3d at 109.  "'Gross negligence has been described as a failure to exercise even that care which a careless person would use.'"  *Williams v. New York City*

*Transit Auth.*, No. 10 CV 0882, 2011 WL 5024280, at *7 (E.D.N.Y. Oct. 19, 2011) (quoting

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C.*, 685

F.Supp.2d 456, 463-64 (S.D.N.Y. 2010) (abrogated on other grounds by *Chin*, 685 F.3d 135)).

Courts in this circuit have found that the "failure to preserve evidence resulting in the loss or

destruction of relevant information is surely negligent, and, depending on the circumstances,

may be grossly negligent." *Pension Comm.*, 685 F. Supp. 2d at 464–65; *see SJS Distribution

Sys., Inc. v. Sam's E., Inc.*, No. 11 CV 1229, 2013 WL 5596010, at *4 (E.D.N.Y. Oct. 11, 2013).

Moreover, although the failure to institute a "litigation hold" is not gross negligence *per se*,

whether the party implemented good document preservation practices is a factor that courts

should consider "in the determination of whether discovery sanctions should issue." *Chin*, 685

F.3d at 162; *see Orbit One*, 271 F.R.D. at 441.  The Court may also consider Defendant Horn's

"status as an attorney and the fact that [he] certainly should have been aware of the preservation

requirements of litigation." *Distefano*, 2013 WL 1339548, at *7 (citing *Elmo v. Callahan*, No.

10-CV-286, 2012 WL 3669010, at *12 (D.N.H. Aug. 24, 2012) ("[L]itigants (especially when

they are lawyers) who act intentionally or with willful disregard to subvert their opponents'

ability to find and offer relevant evidence should face harsh sanctions . . . .")); *accord Neverson-

Young v. BlackRock, Inc.*, No. 09-CV-6716, 2011 WL 3585961, at *3 (S.D.N.Y. Aug. 11, 2011)

(finding plaintiff who donated her laptop "merely negligent" based on the fact that "[i]n contrast

to corporate actors . . . [plaintiff] is unsophisticated and unaccustomed to the preservation

requirements of litigation.").

### 1.    *The Parties' Arguments*

Plaintiff argues that Defendant Horn had no written policies or procedures in place at his

law office concerning the preservation or destruction of documents generally, nor governing the

preservation of ESI, including e-mail communications.  Pl.'s Mem. at 12 (citing Horn Dep. Tr. at

82, 102).  Horn apparently maintained hard copy documents consisting of certain materials

relating to each loan he closed, but only "important" e-mail communications would be printed

out and retained.  Horn Dep. Tr. at 108-09, 81-82.  Further, Horn issued no oral or written

instructions to his employees regarding the obligation to preserve e-mails and ESI in connection

with loan transactions, nor did he issue any specific instructions to preserve e-mails or ESI

following the receipt of the communication from AmTrust alerting him to possible malpractice

claims.  *Id.* at 99-100, 117-18.  Employees were not required to and did not preserve e-mail

communications relating to loan transactions, and Horn left it to the employees' "general

experience" to determine for themselves which e-mails, if any, to preserve in a loan file.  *Id.* at

81-82.  Horn also instructed an outside consultant to transfer some ESI from Horn's work

computer onto his new laptop, but did not request that any e-mails be preserved.  *Id.* at 66-67.

Plaintiff argues that, based on the fact that only three e-mails were produced by Horn, the

prevailing practice in Horn's office was not to preserve e-mails, including those related to the

Loans.  Pl.'s Mem. at 8.  Plaintiff concludes that, based on the foregoing facts in the record, even

assuming Defendant Horn's destruction of the ESI was not malicious, it was still "willful," and

therefore were carried out with a "culpable state of mind."  *Id.* at 12.

Horn argues that "his actions were innocent," *i.e.*, he did not knowingly and willfully

destroy relevant information.  Def.'s Mem. at 13.  Nor were his actions unreasonable or

negligent, Horn maintains.  *Id.*  Horn contends that he saved all of the information that he

thought was relevant to Plaintiff's claims, and that he did not believe it was necessary to save the

e-mail communications of his employees Lee and Garcia.  *Id.*  Horn reiterates that AmTrust

never requested e-mails relating to the four Loans at issue, and the 2009 AmTrust letters related

to only title issues and the title reports — all of which were preserved.  *Id.* at 14.  In sum, Horn

argues that he did not and does not believe that the destroyed ESI could lead to discovery of

admissible evidence.  *Id.*

Plaintiff counters that Horn's characterization of his actions as "innocent" is no defense,

because the evidence was destroyed knowingly, even if Horn did not intend to breach his duty to

preserve it.  Pl.'s Reply at 6.  Finally, Plaintiff contends that AmTrust had no requirement to

notify Horn of exactly which documents to preserve; rather, Horn was put on notice of the claims

against him, and Horn was in the best position to know what documents were in his (and his

employees') possession and which documents should be preserved.  *Id.* at 7.

### 2.   *Analysis*

The Court finds that Plaintiff has met its burden of showing that Horn acted with the

requisite culpable state of mind.  As expressed above, Horn had an obligation to preserve the

relevant e-mails, but failed to take any steps to do so.  Specifically, Horn had no policies or

procedures in place for ensuring the preservation of electronic information.  Rather, it appears

Horn's general practice was *not* to preserve e-mails or, at best, to leave the preservation of e-

mails to the discretion of his employees, who were given no guidelines or instructions

concerning preservation.  In other words, Horn not only "fail[ed] to adopt good preservation

practices" related to e-mails, he failed to adopt any preservation practices at all – a "factor"

which cannot be ignored in the Court's determination whether to impose sanctions.  *Chin*, 685

F.3d at 162.  Horn also never issued a formal litigation hold upon receiving the 2009 letters from

AmTrust, despite the fact that, as an attorney, he should have been familiar with his ethical

"obligation to preserve documents in the event that litigation seems likely for a particular

matter."  *SJS Distribution*, 2013 WL 5596010, at *4; *see Distefano*, 2013 WL 1339548, at *7.

22

While the failure to timely institute a litigation hold does not constitute gross negligence *per se*, *see Chin*, 685 F.3d at 162, the facts here establish Horn's "failure to take the most basic document preservation steps," even after AmTrust alerted Horn that he was under investigation for possible malpractice related to the Loans. *SJS Distribution*, 2013 WL 5596010, at *4; *see Dataflow, Inc. v. Perrless Ins. Co.*, No. 3:11-CV-1127, 2013 WL 6992130, at *7 (N.D.N.Y. June 6, 2013) (finding gross negligence where defendant failed to preserve e-mails related to plaintiff's claim during a system upgrade, and where the record was devoid of evidence that defendant ever implemented a litigation hold).

However, the Court is not convinced that, as Plaintiff argues, Horn's conduct supports a finding of gross negligence. As the court noted in *Williams*,

> Neither negligence or gross negligence has been clearly defined in the context of discovery misconduct, such as spoliation. These terms simply describe a continuum. Conduct is either acceptable or unacceptable. Once it is unacceptable the only question is how bad is the conduct. That said, it is well established that negligence involves unreasonable conduct in that it creates a risk of harm to others.

2011 WL 5024280, at *7 (internal citation, quotation marks, and alterations omitted). Here, Horn does not claim that the destruction of the computers, Blackberries, and back-up tapes was accidental, nor does he refute that he permitted the destruction of these items without preserving the e-mail data they contained. Nonetheless, "a fair reading of the record overall indicates that [Horn] did not act in bad faith." *Abcon Assocs., Inc. v. Haas & Najarian*, No. CV 12-928, 2014 WL 4981440, at *12 (E.D.N.Y. Oct. 6, 2014); *see Mastr*, 295 F.R.D. at 85. In particular, although Horn deliberately discarded his computer hardware, he did not do so with the intention of destroying potentially relevant ESI. *Compare Sekisui*, 945 F. Supp. 2d at 506 (finding "ESI was willfully destroyed" where it was undisputed that the plaintiff directed that the ESI be

permanently deleted and "demanded the destruction" despite the fact that the an employee

"recommended against such action").  Rather, Horn's actions were occasioned by his position as

a solo practitioner responding to a downturn in the economy.  Moreover, Horn's utter ignorance

of (i) his preservation responsibilities and (ii) the probable existence of relevant e-mails can be

considered, to some degree, as "positive evidence of good faith"  *Mastr*, 295 F.R.D. at 85

(finding the defendant's subjective but mistaken belief "that it would not be required to

participate in litigation" evidence of good faith).  It is clear from the record that Horn

"subjectively believed" that relevant e-mails did not exist or, if they did, that it was not necessary

to preserve them.  *Id.*  While, as noted above, this mistaken belief does not excuse the failure to

preserve, it does undercut the existence of bad faith.  *Id.*; *see, e.g.*, *Abcon,* 2014 WL 4981440, at

*12.  Moreover, Horn appears to have made an attempt to comply with his discovery obligations

once he received the 2009 Amtrust letters by preserving the paper documents in his closing files,

*see Alter v. Rocky Point Sch. Dist.*, No. 13-1100, 2014 WL 4966119, at *11 (E.D.N.Y. Sept. 30,

2014), though the fact that AmTrust did not explicitly ask Horn to preserve e-mails does not

serve to lessen his culpability for destroying ESI.

Based on the foregoing factors, the Court finds that, on the "continuum of fault ranging

from innocence through the degrees of negligence to intentionality" in determining a culpable

state of mind, this case falls on the spectrum somewhere between negligence and gross

negligence, closer to the latter than the former.  *Residential Funding Corp.*, 306 F.3d at 108

(internal punctuation and citations omitted).[6]  While the Court does not find evidence of

intentional, malicious spoliation in this case, Horn has, at the very least, acted with "a pure heart

---

[6]       The Court points out that the Committee on the Federal Rules of Civil Procedure has
proposed new rules to become effective December 2015 which will scale back some of the more
stringent guidance offered in *Residential Funding*.

and an empty head." *In re Pfizer*, 288 F.R.D. at 314; *see Harkabi*, 275 F.R.D. at 419 (quoting *Pension Comm.*, 685 F.Supp.2d at 464); *see also Mastr*, 295 F.R.D. at 85 ("That [defendant] acted in good faith does not mean, however, that it lacks the requisite culpability."). Accordingly, the Court finds that Horn had a sufficiently culpable state of mind to support the imposition of sanctions.

### D.    Relevance of Evidence

Relevance may be assumed where the breaching party acted in bad faith or with gross negligence. *Neverson-Young*, 2011 WL 3585961 at *2; *Orbit One*, 271 F.R.D. at 441 (refusing to presume relevance where the evidence was merely destroyed due to the party's failure to abide by recommended preservation practices). However, where the spoliating party has acted only negligently, the moving party must make a showing that the lost materials were relevant. *In re Pfizer*, 288 F.R.D. at 315; *Harakabi*, 275 F.R.D. at 419-20. A party may establish relevance by "'adducing sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction.'" *Harakabi*, 275 F.R.D. at 420 (quoting *Residential Funding Corp.*, 306 F.3d at 109) (interanal alterations omitted). "Courts must take care not to hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed or unavailable evidence because doing so would subvert the purposes of the adverse inference, and would allow parties who have destroyed evidence to profit from that destruction." *Residential Funding Corp.*, 306 F.3d at 109 (internal alterations and citations omitted); *accord Slovin v. Target Corp.*, No. 12-CV-863, 2013 WL 840865, at *5 (S.D.N.Y. March 7, 2013).

### 1.    The Parties' Arguments

Plaintiff argues that, because Defendant Horn acted with gross negligence, the relevancy of the destroyed ESI may be presumed and, in any event, the evidence adduced in this case shows that the destroyed material would have contained information relevant to this lawsuit. Pl.'s Mem. at 13-14.  As noted, Horn testified that paralegal Wallace Lee communicated with the parties to AmTrust loan transactions and assisted with loan closings.  Horn Dep. Tr. 8-9, 38-40. Assistant Sally Garcia also *may have* handled communications with persons involved in the closings.  Horn Dep. Tr. 9, 40.[7]  Horn testified that as a regular part of their duties, Lee and Garcia would have communicated with buyers' counsel, sellers' counsel, title agents and brokers involved with the Subject Loans.  Horn Dep. Tr. 38-41.  It also appears that Horn acknowledged that Lee and Garcia would have conducted at least some communications via e-mail.  Horn Dep. Tr. 41 ("I don't have any e-mails for Wallace or Sally, if that's what you are looking for . . . Anything that he saved, any documents that Wallace scanned with regard to individual closings, would be in the form of a pdf, which we've produced.  The e-mails were just not saved . . . .").

Plaintiff argues that e-mails produced by a third-party (but not by Horn) confirm that Wallace Lee did, in fact, engage in relevant e-mail communications.[8]  Pl.'s Mem. at 4.  For example, Wallace Lee sent e-mails to Innovative Title, the title agency involved in the closing of one of the Subject Loans.  *See* Watson Decl., Ex. 2.  Plaintiff contends that these e-mails concern relevant issues such as financial terms of sale, the approval of a seller's concession, the fees to be paid to parties to a transaction, and the information to be disclosed or withheld from the HUD-1

---

[7]     Plaintiff maintains that Sally Garcia had contact with the parties involved in the loan closings; however, Defendant Horn testified that Garcia "maybe" had communication with those parties.  Horn Dep. Tr. at 40.

[8]     The e-mails were produced in response to a subpoena served upon Innovative Title and were identified by Horn during his deposition.  Pl.'s Mem. at 5; Watson Decl. ¶ 2; Horn Dep. Tr. at 76-80.

Settlement Statements.  Pl.'s Mem. at 13.  *See id.*  Specifically, Plaintiff argues that the e-mails between Lee and employees of Innovative Title illustrate that Horn authorized disbursements of loan funds that were not reflected on the HUD-1 Settlement Statements.  Pl.'s Reply at 9.

Defendant argues that, even if any e-mails existed, they would not be relevant to Plaintiff's claims that (i) the seller of the property was not in record title for more than one year; (ii) the HUD-1 statements do not match the actual disbursements made; and (iii) Horn failed to stop the closings.  Def.'s Mem. at 7.  Horn argues that the only documents relevant to these claims are the HUD-1 statements, disbursement logs, copies of the checks executed at the closing, and title reports.  Defendant Horn further maintains that he has provided the Plaintiff with 1,834 documents relevant to Plaintiff's claims, including (i) disbursement logs; (ii) Horn's IOLA bank account statements setting forth all disbursements; (iii) copies of the checks executed by Horn at the closings; (iv) the Master and Supplemental Closing Agreements; (v) the HUD-1 statements; and (vi) the title reports.  *Id.*  Horn contends that the e-mails obtained from a third party only relate to "general instructions regarding the closings" and are "duplicative of documents that were produced in hard copy."  *Id.* at 16.  Horn concludes that he has been nothing but forthcoming, providing Plaintiff with every document in his possession, and that "[i]t is unclear why plaintiff thinks e-mails from Horn's former employees would provide relevant information . . . ."  *Id.* at 7, 15.

### 2.     *Analysis*

The Court finds that, based on the circumstances presented here, the destroyed e-mails would have had some relevance to Plaintiff's case.  Some courts have presumed relevance when a party intentionally destroyed materials without attempting to preserve relevant information. *See Dataflow*, 2013 WL 6992130, at *8 (noting that in light of gross negligence finding, "the

requirement that [the plaintiff] demonstrate relevance will be obviated, and the court may

properly conclude that the missing evidence would have been unfavorable to [the defendant]");

*but compare SJS Distribution Sys.*, 2013 WL 5596010, at *4 (finding that the defendant's

conduct was grossly negligent but concluding that, because the defendant "presented no evidence

that the e-mails were deleted in bad faith," it has the burden to prove prejudice). The Court need

not make this presumption here since Plaintiff has presented extrinsic evidence "suggesting that

documents relevant to substantiating its claim would have been included among the destroyed

records." *SJS Distribution Sys.*, 2013 WL 5596010, at *4. In particular, Plaintiff has provided e-

mails by Lee, obtained through its subpoena of Innovative Title, which contained information

relevant to Plaintiff's claims against Horn, including the financial terms of sale, the items to be

reflected on the HUD-1 Settlement Statements, the approval of a seller's price concession, and

the information concerning down payment from a borrower. Moreover, as noted during oral

argument, some of these e-mails contained attached documents, including a disbursement log

and closing instructions, which Plaintiff was unable to recover from Innovative Title. The Court

is not persuaded by Horn's conclusory assurances that these attachments were merely

"duplicative" of paper documents he previously produced, and instead finds that Plaintiff should

have been afforded the opportunity to make this determination for itself. Accordingly, the Court

finds that the relevance factor has been satisfied here.

### E.      Prejudice

In determining whether to impose severe sanctions, such as the entry of a default

judgment or an adverse inference instruction, the Court must "assess whether the requesting

party suffered prejudice as a result of the loss or withholding of evidence." *In re Terrorist*

*Attacks on September 11, 2001*, No. 2013 WL 5788307, at *15 (S.D.N.Y. Oct. 28, 2013) (citing

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.,* No. 08 Civ. 5023, 2010 WL 3173785, at *3
(E.D.N.Y. Aug. 11, 2010)). "'A moving party may obtain modest sanctions by showing only
that the lost evidence was pertinent to its claims.  However, where more severe sanctions are at
issue, the movant must demonstrate that the lost information would have been favorable to it.'"
*SJS Distrib.*, 2013 WL 5596010, at *4 (quoting *In re WRT Energy Sec. Litig.*, 246 F.R.D. 185,
197 (S.D.N.Y. 2007) (citing *Zubulake IV*, 220 F.R.D. at 221 (in the absence of sufficiently
egregious conduct, the party seeking sanctions must "demonstrate that a reasonable trier of fact
could find that the missing [evidence] would support [its] claims")).

   "When evidence is destroyed willfully or through gross negligence, prejudice to the
innocent party may be presumed because that party is 'deprived of what [the court] can assume
would have been evidence relevant to [the innocent party's claims or defenses].'" *Sekisui*, 945 F.
Supp. 2d at 504-505 (citing *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 148 (2d
Cir. 2010) (affirming imposition of default judgment against defendants as discovery sanction
where defendants willfully and in bad faith deleted relevant documents without requiring
innocent party to prove prejudice)).  When, however, the destruction of evidence is merely
negligent, the burden falls on the innocent party to prove prejudice.  *Id.* at 505 (citing *Byrnie*,
243 F.3d at 108).  "This circuit has 'repeatedly held that a case-by-case approach to the failure to
produce relevant evidence, at the discretion of the district court, is appropriate.'" *Id.* (quoting
*Chin*, 685 F.3d at 162).

   "The failure to adopt good preservation practices is 'one factor in the determination of
whether discovery sanctions should issue.'" *Sekisui*, 945 F. Supp. 2d at 505 (quoting *Residential
Funding Corp.,* 306 F.3d at 108).  Further, where the missing information has been obtained
from other sources, courts have been reluctant to find that the moving party has suffered

prejudice.  *See Field Day, LLC v. County of Suffolk*, No. 04-2202, 2010 WL 1286622, at *14 (E.D.N.Y. Mar. 25, 2010) ("[I]t is unclear that Plaintiffs suffered any prejudice as destroyed documents apparently have been otherwise obtained.") (citing *Pension Comm.*, 685 F. Supp. 2d at 478 ("While many of these documents may be relevant, the Citco Defendants suffered no prejudice because all were eventually obtained from other sources.")).  Finally, the "equities" of a case may not favor "a drastic remedy" such as an adverse inference instruction where "[t]here is no evidence of bad faith" on the part of the spoliating party.  *SJS Distrib.*, 2013 WL 5596010, at *5.

Plaintiff maintains that, because the record shows that the relevant material was wilfully destroyed, it is under no obligation to prove prejudice.  Pl.'s Mem. at 14.  Under these circumstances, Plaintiff argues, the Court should presume that the FDIC has been prejudiced and should issue an adverse inference instruction.  *Id.*  The Court respectfully disagrees.

Because Horn's culpability falls on the continuum between negligence and gross negligence, the Court declines to *presume* that Plaintiff was prejudiced by Horn's destruction of ESI.  *See generally SJS Distrib.*, 2013 WL 5596010, at *5.  Rather, Plaintiff must demonstrate prejudice in order for the Court to consider imposing an extreme saction such as an adverse inference instruction.  *See, e.g.*, *Treppel*, 249 F.R.D. at 120 (adverse inference instruction is "an extreme sanction and should not be imposed lightly.").  Plaintiff has not met this burden.  Although the destroyed e-mails would likely have aided Plaintiff in gaining additional information relevant to its case, it cannot be said that the e-mails would have corroborated Plaintiff's account of events or proven its claims against Horn.  *See SJS Distrib.*, 2013 WL 5596010, at *5.  Moreover, there is some indication that the missing information has been (or could be) obtained from other sources, which weighs against finding prejudice.  *Field Day*, 2010

WL 1286622, at *14; *see SJS Distrib.*, 2013 WL 5596010, at *5 (adverse inference not

warranted where "other evidence is still available to defendant") (citing *Golia v. Leslie Fay Co*.,

No. 01 CV 1111, 2003 WL 21878788, at *10 (S.D.N.Y. Aug. 7, 2003) (finding that the

spoliator's "misconduct has not robbed [the opposing party] of the only evidence on which they

could base their case")).  As noted, Plaintiff has obtained at least some spoliated evidence

through third-party discovery, and – notwithstanding the fact that Plaintiff believes it should not

have to seek discovery from non-parties and incur further expenses – it may seek additional

information through depositions of relevant non-parties, including Wallace Lee and Sally Garcia.

Moreover, Plaintiff's counsel conceded during oral argument that it did not attempt to subpoena

the title company defendants Legend or NMR, or the buyers' and sellers' attorneys associated

with the Loans.

### F.	Sanction to Be Imposed

Even where a court finds that a discovery failure does not result in prejudice, courts still

maintain broad discretion in "crafting an appropriate sanction for spoliation."  *West*, 167 F.3d at

779; *Fujitsu*, 247 F.3d at 436.  Although the Court finds that an adverse inference is not

warranted in these circumstances, Horn's actions (or lack of action) require accountability and

necessitate a response.  Therefore, the Court is imposing a monetary sanction of $3,000 upon

Horn, to be made payable to Plaintiff.  *See Alter*, 2014 WL 4966119, at *12 (imposing a

monetary sanction of $1,500 upon defendant and the law firm which represented it for placing

the plaintiff in the position of having to make a motion for sanctions, even though the court

ultimately did not make a finding of spoliation).  The Court further advises Plaintiff's counsel

that he is free to explore at trial the issue of records being discarded, without an adverse

inference charge, certainly during cross-examination or for impeachment purposes.  The Court in

its discretion declines to award further sanctions, in part because Defendant Horn will surely feel the impact of this issue at trial in any event, even without an adverse inference.

**VII.   CONCLUSION**

For the foregoing reasons, Plaintiff's motion for sanctions is GRANTED, to the extent set forth in this Memorandum and Order.  The Court imposes upon Defendant Horn a monetary sanction in the amount of $3,000. This sanction is to be paid over to the Plaintiff within thirty (30) days.

**SO ORDERED.**

Dated: Central Islip, New York
        March 31, 2015

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge