**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
AMTRUST BANK,

                    Plaintiff,

          - against -

GARY A. HORN, ESQ., LEGEND LAND
SERVICES, LLC, and NMR ADVANTAGE
ABSTRACT, LTD.,

                    Defendants.
-------------------------------------------------------------X

**MEMORANDUM**
**AND ORDER**

CV 12-5958 (DRH) (AKT)

**F I L E D**
IN CLERK'S OFFICE
U.S. DIST....              N.Y.

★   APR 08 2015   ★

LONG ISLAND OFFICE

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    PRELIMINARY STATEMENT

Plaintiff Federal Deposit Insurance Corporation as Receiver for AmTrust Bank ("Plaintiff"
or "FDIC") commenced this action against Gary A. Horn, Esq. ("Horn"), Legend Land Services,
LLC ("Legend"), and NMR Advantage Abstract, Ltd. ("NMR") (collectively, "Defendants") for
breach of contract, breach of fiduciary duty, attorney malpractice, negligent misrepresentation, and
negligence. *See generally* Compl. [DE 1]. Plaintiff seeks to recover losses incurred by AmTrust
Bank, F.S.B. ("AmTrust") in connection with six residential mortgage loans for which Horn acted
as the closing agent. *See id.* Horn filed an Answer to the Complaint in which he asserted five
affirmative defenses against Plaintiff. *See generally* Horn Answer [DE 19].

Defendant Horn now seeks leave to amend his Answer, pursuant to Fed. R. Civ. P. 15(a), to
assert two new affirmative defenses: (i) lack of standing and lack of capacity to sue; and (ii) failure
to mitigate damages. *See* Motion to Amend/Correct/Supplement, Answer to Complaint [DE 70];

Memorandum of Law in Support of Motion to Amend ("Horn Mem.") [DE 71]. Plaintiff opposes

the motion. *See* Memorandum in Opposition to Motion to Amend ("Pl.'s Opp.") [DE 72]. For the

reasons set forth below, Horn's motion to amend his Answer is respectfully DENIED.

## II.   BACKGROUND

### A.   Allegations in the Complaint

In September 2008, AmTrust, a federally chartered savings bank, disbursed over $2.3

million dollars to fund six residential mortgage loans (the "Loans"). *See* Compl. ¶ 1. AmTrust

was placed into receivership on December 4, 2009, and the FDIC succeeded to all of AmTrust's

claims. *Id.*; *id.* at ¶ 8. As receiver, the FDIC is tasked with the obligation to recover losses

incurred by AmTrust as a result of its operations, including any losses resulting to AmTrust

because of loans AmTrust funded. *Id.* ¶ 9. The Complaint asserts that the FDIC "owns the subject

claims and has standing to prosecute this action as receiver for AmTrust." *Id.* at ¶ 8. One of the

Loans at issue was for a property located at 41 Essex Street in Brooklyn ("41 Essex St. Loan").

*See id.* ¶ 60.

According to the Complaint, after the Loans closed, AmTrust learned that the Loans

involved the use of inaccurate title commitments, unauthorized "flip" transactions,[1] unauthorized

disbursements of loan funds, and falsified checks. *Id.* ¶ 1. AmTrust also learned that the

borrowers failed to provide cash at closing as required. *Id.* The Complaint alleges that the nature

of these transactions was concealed from AmTrust at the time the Loans closed. *Id.* Each of the

Loans is in default and went into default shortly after the transactions were closed. *Id.* ¶ 17.

---

[1]     The Complaint defines a "flip" transaction as consisting of "repeated sales of a property
within a short period of time, and for AmTrust's purposes, within one year or less." Compl. ¶ 50.

Defendant Horn is a licensed attorney who served as AmTrust's "closing agent" for the Loans. *See id.* ¶¶ 10-11; 18. As closing agent, Horn signed and agreed to be bound by the terms of AmTrust's Master Closing Instructions and Supplemental Closing Instructions ("Closing Instructions"). *Id.* ¶ 11, Ex. A. The Closing Instructions provided directives concerning, among other things, conditions that must be satisfied before closing on a loan and circumstances which require the closing agent to stop the transaction and contact AmTrust before proceeding. *See id.* ¶¶ 20-29. The FDIC alleges that, by signing the Closing Instructions and conducting the closings, Horn assumed fiduciary and contractual duties to AmTrust. *Id.* ¶ 19. According to the Complaint, Horn failed to comply with many of the Closing Instructions' directives when he closed on the Loans, including the 41 Essex Street Loan. *See generally id.* ¶¶ 40-107. Plaintiff alleges that, but for Horn's conduct, AmTrust would not have funded the Loans, "all of which are now in default and severely undersecured." *Id.* ¶ 111.

The Complaint asserts causes of action for breach of contract, breach of fiduciary duty, attorney malpractice, and negligent misrepresentation against Horn. *Id.* ¶¶ 108-140 [DE 1]. The Complaint also sets out a negligence claim against Legend and NMR, the entities which served as title agents for a number of the Loans. *Id.* ¶¶ 12-15, 141-154.

### B.    Horn's Answer

Horn filed an Answer to the Complaint and asserted a cross-claim against Legend and NMR for contractual and common law indemnification. DE 19. In his Answer, Horn asserted five affirmative defenses against the FDIC: (i) statute of limitations; (ii) failure to state a claim; (iii) culpable conduct of Plaintiff and/or AmTrust; (iv) assumption of the risk; and (v) third parties caused the damages alleged by Plaintiff and/or Amtrust. *See* Horn Answer ¶¶ 155-59.

3

## C.      Relevant Procedural History

Plaintiff commenced this action against Defendants on December 3, 2012,[2] and Horn filed his Answer and cross-claim against Legend and NMR on January 24, 2013. Plaintiff and Horn appeared before the Court for an Initial Conference on February 27, 2013. DE 29.[3] As a result of the Conference, the Court issued a Case Management and Scheduling Order ("CMSO") on April 15, 2013, which set forth guidelines concerning any modification of the discovery deadlines as well any amendment of the pleadings. DE 66. The Court advised the parties in its CMSO that these deadlines would "**be enforced, and will only be modified upon a timely showing of good cause.**" *Id.* at V(a) (emphasis in original). Moreover, the Court explained that "[a] request for an extension of any deadline submitted less than 30 days before that deadline will be considered untimely and will not be granted absent extraordinary circumstances." *Id.* at V(b). The parties were given until May 29, 2013 to seek leave to join additional parties or amend the pleadings. *Id.* at I.

On May 17, 2013, Plaintiff served its responses to Horn's first set of interrogatories. *See* Pl.'s Response to Def.'s First Set of Interrogatory Demands ("Pl.'s Resps."), attached as Ex. B to Pl.'s Opp. [DE 72-2]. Plaintiff's interrogatory responses described who owned each of the Loans and provided information regarding the sales of the Loans. *See* Pl.'s Resps. ¶¶ 7, 9, 14, 16, 21, 23,

---

[2]      The Court has jurisdiction over Plaintiff's claims pursuant to 12 U.S.C. § 1819. *See* 12 U.S.C. § 1819 (all suits of a civil nature at common law or in equity to which the FDIC is a party shall be deemed to arise under the laws of the United States).

[3]      After Legend and NMR failed to answer or otherwise respond to the Complaint or Horn's cross-claim, Plaintiff moved for a default judgment against Legend and NMR. DE 28. For the reasons set forth in the Report and Recommendation from this Court, *see* DE 57, Judge Hurley granted Plaintiff's motion and entered a default judgment against Legend and NMR as to liability for Plaintiff's negligence claim against them. DE 63.

28, 30, 35, 37, 42, 44. With respect to the 41 Essex St. Loan, Plaintiff stated that the Federal

Home Loan Mortgage Corporation ("FHLMC" or "Freddie Mac") currently owns that loan, which

AmTrust sold prior to its "failure" in December 2009. *Id.* ¶¶ 21, 23. Plaintiff asserted, however,

that the FDIC retains and "owns the tort claims relating to the 41 Essex Street Loan at issue in this

case." *Id.* ¶ 21. Plaintiff further stated that it would provide documentation and additional

information relating to the collection, sale, and repurchase of the 41 Essex Street Loan (as well as

the other Loans) once it completed an investigation. *See id.* ¶¶ 21, 23.

The parties appeared before the Court on July 17, 2013 for a Discovery Status Conference.

*See* DE 34. As a result of that conference, the Court adjourned the deadline to complete fact

discovery to November 30, 2013, and gave the parties until September 5, 2013 to make a motion to

compel or seek any other discovery-related relief. *Id.* ¶ 1. The Court later granted Horn's

application to extend the discovery motion deadline to October 4, 2013. Elec. Order,

Sept. 6, 2013.

On October 4, 2013, Horn filed a letter motion to compel Plaintiff to provide documents

related to (i) all payments made by the six borrowers of the Loans; (ii) "any mortgage foreclosure

action brought as a result of the mortgages"; and (iii) "the sale of any of the mortgaged properties."

DE 39. The Court granted Horn's application and directed Plaintiff to provide the outstanding

discovery outlined in Horn's letter motion by October 16, 2013. *See* Elec. Order, Oct. 8, 2013.

The Court also adjourned the deadline for the parties to raise discovery-related issues to

November 4, 2013. *See id.* On October 11, 2013, Plaintiff made an application, with Horn's

consent, to extend Plaintiff's deadline to provide the outstanding discovery to October 24, 2013.

DE 41. The Court granted that application. *See* Elec. Order, Oct. 15, 2013. Plaintiff ultimately

provided ███████████████████████████████████████████████████████████

████████████████████████ to Horn on November 27, 2013. ████████████████████████████

████████████████████████████████████████████████

On November 22, 2013, Horn filed a letter motion seeking to extend the November 30, 2013 fact discovery deadline "for the sole purpose of conducting one final [Rule] 30(b)(6) deposition of [P]laintiff" on December 11, 2013. DE 49 at 1. Horn also requested that the expert discovery schedule be held in abeyance pending a settlement conference before the Court. *Id.* at 2. The Court modified the CMSO "solely to permit the deposition to go forward on December 11, 2013" and stayed the expert discovery schedule pending a settlement conference. Elec. Order, Nov. 25, 2013.

On December 11, 2013, Horn deposed Jonny Joseph Teal, a "[r]esolution and receivership specialist" for the FDIC. Tr. of the Dec. 11, 2013 30(b)(6) Dep. of Jonny Teal of FDIC ("Teal Dep. Tr."), attached as Ex. A to the Schleifer Decl., at 5:2-4 [DE 70-1]. During his deposition, Teal discussed the Freddie Mac agreement. *See* Teal Dep. Tr. at 59:8-60:24. Specifically, Teal testified as follows:

> Q.    Is the [41 Essex St. Loan] retained by the FDIC?
>
> A.    ████████████████████████████████████████
> ████ and the FDIC retains the rights to that or the claim to that particular loan. I believe it was approximately $440,000 which had a few payments around $438,000. Somewhere around that ballpark.
>
> Q.    Is there a split of the proceeds or losses between the FDIC and Freddie Mac on the [41 Essex St.] loan?
>
> A.    Not that I'm aware of at all. It doesn't work th████████████
> ████████████████████████████, where the FDIC retains those rights or the rights to the claim. There is no loss share thing like 80/20, that sort of thing.

*Id.* at 59:12-60:24.

On March 11, 2014, the Court met with the parties for a settlement conference, which ultimately did not achieve a resolution of this action. DE 60. The Court lifted the stay on expert discovery, *see id.*, and issued a Final Scheduling Order setting forth the following deadlines for the completion of expert discovery:

> • Deadline to serve expert report(s) and all expert disclosures required under Rule 26 for any party utilizing an expert in its case-in-chief: April 25, 2014
>
> • Deadline to serve rebuttal expert report(s) and expert disclosures: May 30, 2014
>
> • All expert depositions must be completed by: June 30, 2014.

DE 62.

On May 30, 2014, Plaintiff served on Horn a rebuttal report by its expert, Peter D. Tamsen, Esq. ("the Tamsen report"). *See* Tamsen Report, attached as Ex. C to the Schleifer Decl. [DE 70-4]. The Tamsen report concludes that the appraised prices of the properties subject to the Loans set forth in Horn's expert report did not provide "a true indicator of Plaintiffs expected net recovery after disposition of the appraised properties" at a foreclosure sale. *Id.* at 3. According to Tamsen, Horn's expert appraisal did not take into account that "[a] foreclosure sale typically will generate a lower sales price than the appraised value of the property." *Id.* at 7. To support this proposition, Tamsen stated, as relevant here:

> When a borrower defaults on a mortgage loan, the property may be subject to a foreclosure proceeding, and may result in a foreclosure sale, a distressed 'short sale' or a loan modification. A distressed or 'short' sale results in the lender agreeing to sell the property to a third party for less than the outstanding unpaid principle balance on the loan. The lender avoids future uncertain losses from continuing the lengthy judicial foreclosure process. Short sales or loan modifications

7

> provide the lender with certainty about what its losses (planned recovery) will be and enable borrowers to avoid liability for deficiencies under the original note and mortgage. With short sales and loan modifications, the appraised value of the property is not an accurate indicator of the amount the lender will recover.

*Id.* at 6. Ultimately, Tamsen concluded that Horn's expert could not accurately predict a lender's expected recovery in a foreclosure sale merely by conducting a "less than full, drive-by appraisal" and relying on "the appraised value of a property." *Id.* at 10.

### D.    Horn's Motion to Amend His Answer

On June 18, 2014, Horn filed a letter on ECF proposing a briefing schedule on his motion to amend his Answer to include two additional affirmative defenses. DE 64. The Court approved the briefing schedule but noted its "concern" that Horn was moving to amend his Answer after fact discovery had closed in this case. Elec. Order, June 20, 2014. The motion was fully briefed and filed under seal on July 25, 2014. *See* DE 69-73.[4]

Horn's proposed Amended Answer includes the following two additional affirmative defenses:

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

> 160. If the plaintiff sustained any damages as alleged in the Complaint, such damages were caused, aggravated or contributed to by plaintiff's failure to take reasonable efforts to mitigate damages, and any award made to the plaintiff must be reduced in such proportion and to the extent that the injuries complained of were caused, or contributed to by said failure to mitigate damages.

---

[4]    While the motion to amend was being briefed, the parties each filed a letter with Judge Hurley seeking a pre-motion conference regarding their anticipated motions for summary judgment. *See* DE 66-67. In light of the pending motion to amend, Judge Hurley denied the requests for pre-motion conferences without prejudice to renew following resolution of the motion to amend. Elec. Order, July 29, 2014. This Court also stayed the parties' submission of the proposed Pre-Trial Order and the Pre-Trial Conference pending resolution of Horn's motion to amend. Elec Order., Oct. 2. 2014.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

> 161. The plaintiff herein lacks standing and lacks capacity to bring
> suit for the causes of action alleged in plaintiffs Complaint.

Amended Answer, attached as Ex. D to the Schleifer Decl. [DE 70-5].

### III. LEGAL STANDARD

Rule 15(a) of the Federal Rules of Civil Procedure provides that in cases where a party

cannot amend as a matter of course. "a party may amend its pleading only with the opposing

party's written consent or the court's leave." *Accord Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d

243, 258 (2d Cir. 2002); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). A court "should

freely give leave when justice so requires" and such leave is in the court's discretion. *See* Fed. R.

Civ. P. 15(a)(1)(B)(2); *accord Grace v. Rosenstock*, 228 F.3d 40, 52 (2d Cir. 2000).

Where, as here, a motion to amend is filed after a deadline set by the CCMO, the motion is

subject to the more demanding standard of Rule 16(b). *See Parker v. Columbia Pictures Indus.*,

204 F.3d 326, 340 (2d Cir. 2000); *Ricciardi v. Kimco Facilities Servs. Corp.*, No. 10 Civ. 5731,

2012 WL 6761533, at *1 (E.D.N.Y. June 12, 2012), *adopted by* 2013 WL 42416 (E.D.N.Y. Jan. 3,

2013); *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 117 (E.D.N.Y. 2011);

*Sokol Holdings, Inc., v. BMB Munai, Inc.*, No. 05 Civ. 3749, 2009 WL 2524611, at *7 (S.D.N.Y.

Aug. 14, 2009). According to Rule 16(b), the court must enter a scheduling order setting deadlines

for subsequent proceedings in the case, including "the time to join other parties [and] amend the

pleadings." FED. R. CIV. P. 16(b). "By limiting the time for amendments, the rule is designed to

offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and

the pleadings will be fixed." *See Parker*, 204 F.3d at 339-40 (internal quotations omitted); *accord

Ricciardi*, 2012 WL 6761533, at *1. Thus, "[w]here a scheduling order has been entered, the

lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (quoting Fed. R. Civ. P. 15 and 16)); *see Parker*, 204 F.3d at 340; *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012). The balancing act between Rules 15(a) and 16(b) is necessary to prevent a scheduling order from being rendered meaningless and undermine a court's ability to manage its docket. *Eberle v. Town of Southampton*, No. 12 Civ. 4472, 2013 WL 6198298, at *2 (E.D.N.Y. Nov. 27, 2013). "[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Parker*, 204 F.3d at 340; *see also Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009).

In certain cases, however, courts may determine that a deadline "cannot reasonably be met despite the diligence of the party seeking the extension." *Parker*, 204 F.3d at 339 (internal quotations omitted). "In such cases, where the moving party has demonstrated good cause, the court may grant leave to amend the scheduling order to extend the deadline." *Id.*; *see 246 Sears Road Realty Corp. v. Exxon Mobil Corp.*, No. 99 Civ. 889, 2012 WL 4174862, at *9 (E.D.N.Y. Sept. 18, 2012). "[I]n allowing modifications of scheduling orders only for good cause, [Rule 16(b)] provides the district courts discretion to ensure that limits on time to amend pleadings do not result in prejudice or hardship to either side." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243-44 (2d Cir. 2007).

"Good cause in this context depends on the diligence of the moving party, and, to satisfy the standard, the movant must demonstrate that it is has been diligent in its effort to meet the

10

Court's deadlines." *Sokol*, 2009 WL 2524611, at *7 (internal citations and quotations omitted);

*see Enzymotec Ltd. V. NBTY, Inc.*, 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2011). "In other words,

the party must show that, despite its having exercised diligence, the applicable deadline could not

have been reasonably met." *Sokol*, 2009 WL 2524611 at *7 (citing *Rent-A-Center Inc. v. 47

Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003)). "A party fails to show good

cause when the proposed amendment rests on information 'that the party knew, or should have

known, in advance of the deadline.'" *Perfect Pearl*, 889 F. Supp. 2d at 457 (quoting *Sokol*, 2009

WL 2524611, at *8); *see Lamothe v. Town of Oyster Bay*, No. 08–cv–2078, 2011 WL 4974804, at

*5–6, (E.D.N.Y. Oct. 19, 2011).

    In determining whether the good cause standard is met. "the primary consideration is

whether the moving party can demonstrate diligence[,]" but that is not the only consideration.

*Kassner*, 496 F.3d at 244. "The district court, in the exercise of its discretion under Rule 16(b),

also may consider other relevant factors including, in particular, whether allowing the amendment

of the pleading at this stage of the litigation will prejudice defendants." *Id.*; *see Ritchie Risk

Limited Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79 n.2 (S.D.N.Y.

2012); *see also Holmes*, 568 F.3d at 334–35 (affirming denial of motion to amend where plaintiff

failed to establish good cause and stating that the lenient standard under Rule 15(a) "must be

balanced against" Rule 16(b)'s good cause requirement) (quoting *Grochowski.*, 318 F.3d at 86).

Even where the prejudice to the non-moving party "may well be minimal," a failure to show good

cause can warrant denial of a motion to amend. *Oppenheimer & Co. Inc. v. Metal Mgmt., Inc.*, No.

08 Civ. 3697, 2009 WL 2432729, at *4 (S.D.N.Y. July 31, 2009), *aff'd*, 2010 WL 743793

(S.D.N.Y. Mar. 2, 2010).

IV.   **D**ISCUSSION

A.   **The Parties' Contentions**

Horn argues that "justice requires" that he be permitted to amend his Answer pursuant to

Rule 15(a). Horn Mem. at 4. According to Horn, his proposed amendments are based on "recently

discovered information that was exclusively in [P]laintiff's possession" and which Horn could not

have learned before the deadline to amend his Answer had passed. *Id.* Specifically, Horn

contends that his proposed affirmative defense of lack of standing is based upon ███████████

███████████████████████████████, and (ii) Jonny Teal's testimony

about that agreement at his Rule 30(b)(6) deposition on December 11, 2013. *See id.* at 5. Horn

asserts this evidence presented

> the first indication that the plaintiff had sold its interest in certain loans
> to Freddie Mac and has no direct interest the property (*i.e.* the
> mortgage and promissory note), and, therefore no interest in the
> closings associated with the property. To the extent that plaintiff has
> any interest in the property, ████████████████ As
> plaintiff is not making its present claims ██████████████
> it lacks standing to bring any claims arising out of the loans sold to
> Freddie Mac.

*Id.* at 2. Horn further contends that his proposed defense that Plaintiff failed to its mitigate

damages arises out of the statement in the Tamsen report, served on May 30, 2014, "admit[ing]

[Plaintiff] could have potentially lessened its damages by entertaining a short sale or a loan

modification." *Id.* at 3.

Horn asserts that "there has been no delay, let alone undue delay, in [his] proposing the

amended answer." *Id.* at 5. Horn points out that the Court imposed "a four-month stay of expert

discovery" on November 25, 2013, which was not lifted until after the March 11, 2014 settlement

conference. *See id.* Horn also notes that he advised Plaintiff of his intention to amend his Answer

12

within days of receiving the Tamsen report, "while expert discovery [was] still open (and before

expert depositions were conducted), and prior to the filing of summary judgment motions." *Id.*

In assessing prejudice under Rule 15(a), Horn argues that permitting the requested

amendments will not be prejudicial to the Plaintiff. *Id.* at 6. Horn argues that Plaintiff should have

known that Horn would raise the affirmative defense of failure to mitigate damages because Horn

asserted culpable conduct as an affirmative defense in his original Answer. *Id.* By the same token,

Horn asserts that his culpable conduct defense "incorporate[d] the affirmative defense of failure to

mitigate damages" that he now seeks to assert. *Id.* Horn also maintains that Plaintiff cannot claim

it was unaware of "its own efforts to mitigate damages or its standing to bring the present claims"

because "all information and discovery" regarding these proposed affirmative defenses was in

Plaintiff's possession. *Id.* Finally, Horn points out that he "is not requesting that the Court reopen

fact discovery, just that the Court permit Horn to amend [his] answer [and] argue the affirmative

defenses of failure to mitigate damages and lack of standing at trial or in a summary judgment

motion." *Id.*

In its opposition, Plaintiff argues, as a preliminary matter, that Horn's failure to timely

plead his affirmative defenses resulted in the waiver of those defenses under Fed. R. Civ. P. 8(c).

*See* Pl.'s Opp. at 4. Notwithstanding whether the defenses were waived, Plaintiff asserts that Horn

has not shown "good cause" under Rule 16(b) for his delay in bringing the instant motion over one

year after the deadline to amend the pleadings has passed. *Id.* at 5. According to Plaintiff, Horn

learned that Freddie Mac owned the 41 Essex St. Loan on May 17, 2013 – nearly two weeks prior

to the deadline to amend – when Plaintiff provided its responses to Horn's First Set of

Interrogatories. *Id.* Although Plaintiff subsequently produced ████████████████████████

████████████████ and Horn deposed Teal on December 11, 2013, "Horn then waited another six

13

months after receiving the documents and taking the deposition . . . before attempting to amend his answer." *Id.* Plaintiff argues that Horn has provided no valid justification for this delay and, in any event, his lack of standing defense is futile because Plaintiff does, in fact, have standing to bring this action. *See id.*

Plaintiff further argues that Horn was not diligent in asserting his failure to mitigate damages defense. *Id.* at 6. Primarily, Plaintiff states Horn's purported basis for this defense – the Tamense report – is not an admission made by Plaintiff, as Horn contends, nor does the report "offer any opinion about whether FDIC[] acted reasonably in attempting to mitigate its damages. Rather, the Tamsen expert report opines on why the appraised values of the properties set forth in Horn's expert report do not accurately predict what the FDIC[] may recover on any further foreclosure or short sale of the properties." *Id.* at 7. Plaintiff also argues that Horn's "culpable conduct" defense did not put Plaintiff on notice that Horn intended to assert failure to mitigate damages as a defense. In any event, Plaintiff contends that Horn was required to plead failure to mitigate damages as separate affirmative defense. *See id.* at 7-8. Finally, the FDIC states that, despite Horn's contentions to the contrary, the FDIC would be prejudiced by the proposed amendments because it was denied an "opportunity to explore in discovery Horn's theor[ies] and to request that he identify the evidentiary support for these defenses before he attempts to prove them at trial." *Id.* at 8.

In his reply, Horn essentially reiterates the arguments he raised in his original memorandum of law, but he urges that the "totality of the circumstances" weigh in favor of the Court granting him leave to assert his two additional defenses. *See* Horn Reply at 2 [DE 73]. Horn maintains that the circumstances presented here are akin to those in *Balk v. New York Inst. of Tech.*, No. CV 11-509, 2013 WL 6990767, at *1 (E.D.N.Y. Sept. 30, 2013), where this Court

permitted the defendants to amend their answer to assert two new affirmative defenses nearly eight months after the deadline in the CMSO for amending the pleadings had expired and discovery had closed. *See id.* (citing *Balk*, 2013 WL 6990767, at *6). Horn argues that "the case for allowing [him] to amend his answer is even more pronounced than in *Balk* because Horn was diligent in requesting the proposed amendments, discovery does not need to be re-opened, the proposed amendments were made prior to the conclusion of expert discovery and before dispositive motion practice commenced and [before] a trial date has been set." *Id.* at 3.

### B.    Analysis

#### 1.    *Waiver of Affirmative Defenses*

As a preliminary matter, Plaintiff argues that, pursuant to Rule 8(c), Horn has waived the affirmative defenses of failure to mitigate damages and lack of standing by failing to assert those defenses in his Answer. *See* Pl's Opp. at 4. "Failure to mitigate damages is an affirmative defense and therefore must be pleaded" under Rule 8(c). *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994) (citing Fed. R. Civ. P. 8(c)); *see F.D.I.C. v. Drysdale*, No. 10-CV-4778, 2013 WL 5965723, at *5 (E.D.N.Y. Nov. 7, 2013) ("The failure to mitigate damages is an affirmative defense that is waived if not plead in a defendant's answer."); *Morgenstern v. Cnty. of Nassau*, No. 04-CV-58, 2009 WL 5103158, at *1 (E.D.N.Y. Dec.15, 2009). Lack of standing, on the other hand, generally implicates a federal court's jurisdiction to hear a case and therefore "is not subject to waiver." *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996); *United States v. Hays*, 515 U.S. 737, 742 (1995); *see Thompson v. County of Franklin*, 15 F.3d 245, 248–49 (2d Cir. 1994).

It is not uncommon for parties to conflate a lack of standing defense with the defense that a party lacks capacity to bring suit, which goes to "a party's personal right to litigate in federal

court." *Pressman v. Estate of Steinvorth*, 860 F. Supp. 171, 176, 176 n.1 (S.D.N.Y. 1994); *see Wiwa v. Royal Dutch Petroleum Co.*, No. 01-CV-1909, 2009 WL 464946, at *8 (S.D.N.Y. Feb. 25, 2009) (stating that "standing and capacity are distinct concepts" and noting that the plaintiff was "mistaken" in construing the defendant's standing arguments "as raising a capacity defense"); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. City of Albany, N.Y.*, 250 F. Supp. 2d 48, 60 (N.D.N.Y. 2003) ("The concept of capacity is often confused with the concept of standing, but the two legal doctrines are not interchangeable. Standing is an element of the larger question of justiciability[.] Capacity, in contrast, concerns a litigant's power to appear and bring its grievance before the court.") (internal quotation marks and alterations omitted). Under Fed. R. Civ. P. 9(a), lack of capacity "is an affirmative defense and can be waived if not raised 'in a timely matter, *i.e.*, at the outset of the lawsuit.'" *In re Air Crash Disaster off Coast of Nantucket Island, Mass. on Oct. 31, 1999*, No. MD-00-1344, 2010 WL 1221401, at *6 (E.D.N.Y. Mar. 29, 2010) (quoting *Pressman*, 860 F. Supp. at 176). To that end, where a party seeks to raise a "standing" defense that, at its essence, challenges the plaintiff's lack of capacity to sue, that defense may be "waived" if not asserted in a responsive pleading. *See Allan Applestein TTEE FBO D.C.A. v. Province of Buenos Aires*, 415 F.3d 242, 245 (2d Cir. 2005) (holding that the defendant "appears to have waived the argument that the indenture does not give [the plaintiff] standing to sue" as a beneficial owner rather than the registered holder of the note the plaintiff sought to collect on because the defendant "did not raise the argument anywhere in its answer"); *Pressman*, 860 F. Supp. at 176 (rejecting the plaintiff's "assertion that standing and capacity are in effect the same due to their often blurred distinctions among litigants and the courts" and holding that the plaintiff had waived its capacity defense under Rule 9(a)).

16

Here, Horn's proposed Sixth Affirmative Defense alleges that Plaintiff failed to take reasonable efforts to "mitigate damages." Amended Answer ¶ 160, Schleifer Decl., Ex. D. His proposed Seventh Affirmative Defense asserts that Plaintiff "lacks standing and lacks capacity to bring suit for the causes of action alleged in [the] Complaint." *Id.* ¶ 161. There is no question that Horn's defense of failure to mitigate damages may be waived because he did not plead it in his Answer. *See Travellers Int'l*, 41 F.3d at 1580. Whether Horn's proposed standing/capacity defense is subject to waiver presents a closer question. Particularly, to the extent Horn seeks to assert that the FDIC lacks the capacity to bring suit against him because ████████████████████ █████████, that challenge is waivable. *See* Fed. R. Civ. P. 9(a). However, it is unclear whether Horn also seeks to assert that the FDIC "lacks standing" because the Court lacks jurisdiction over its claims – a challenge Horn is free to raise at any time in this litigation. *See, e.g., Thompson,* 15 F.3d at 248–49.

The Court need not resolve this waiver issue, however, because even if a defense may be waived if not set forth in a responsive pleading, "any waiver would be vitiated by a court order granting leave to amend the relevant pleading." *Affiliated FM Ins. Co. v. Liberty Mech. Contractors, Inc.*, No. 12 CIV. 5160 KPF, 2013 WL 4526246, at *4 (S.D.N.Y. Aug. 27, 2013) (citing *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152 (2d Cir. 1968) (a court may grant leave to amend an answer to assert a statute of limitations defense)). It therefore remains within the Court's discretion whether to grant Horn leave to amend his Answer to assert affirmative defenses that should have be pleaded in the first instance. *Id.* (collecting cases holding that a defendant may be granted leave to amend its answer to include a statue of limitations defense); *see Balk*, 2013 WL 6990767, at *12 (granting the defendant's motion to amend its answer to assert the affirmative defenses of statute of frauds and merger). Accordingly, rather than deem Horn's proposed

17

defenses as waived, the Court, in its exercise of this discretion, will instead consider whether Horn

should be permitted to amend his Answer to assert those defenses. *See Affiliated FM Ins.*, 2013

WL 4526246, at *4.

### 2.    *Good Cause Under Rule 16(b)*

As a preliminary matter, Horn's motion to amend incorrectly focuses on Rule 15(a).

Parties seeking to amend pleadings after the deadline to do so has expired must first satisfy the

"good cause" threshold under Rule 16(b) to amend a scheduling order. *See Eberle*, 985 F. Supp.

2d at 346 ("Thus, a party seeking to amend a complaint after the Rule 16(b) deadline to do so has

lapsed must first establish good cause to modify that deadline.") (citing *Hogan v. J.P. Morgan

Chase Bank*, 2008 WL 4185875, at *2 (E.D.N.Y. Sept. 4, 2008)).  Pursuant to the Initial

Conference and CMSO in this case, the parties were notified that the deadline to bring any motions

to amend the pleadings was May 29, 2013.  Horn did not move to amend by that deadline nor did

he ask the Court to extend the deadline before it passed.  Accordingly, the Court reviews Plaintiff's

motion in accordance with Rule 16(b) rather than Rule 15(a).

The primary, but not sole, consideration in evaluating "good cause" under Rule 16(b) "is

whether the movant has exercised diligence but still failed to meet the Court's deadline despite

such efforts." *Chrebet v. Cnty. of Nassau*, No. 09 CV, 2014 WL 1836835, at *16 (E.D.N.Y. May 8,

2014).  Upon reviewing the record and the submissions made on this motion, the Court finds that

Horn has not demonstrated the diligence necessary to establish "good cause" to amend his Answer

to assert two new affirmative defenses against Plaintiff.

At the outset, the Court rejects Horn's claim that the four-month stay of expert discovery

imposed in this case should excuse his more than one-year delay in seeking to amend his Answer.

The May 29, 2013 deadline to amend the pleadings set forth in the CMSO had already passed by

the time Horn sought a stay of expert discovery on November 22, 2013. Thus, although Horn

suggests otherwise, the fact that the Court ultimately stayed expert discovery between

November 25, 2013 and the March 11, 2014 settlement conference had no impact on the time

within which Horn was permitted to move to amend his Answer. Nor was Horn prevented from

seeking leave to amend while this stay was in effect. Fact discovery was never stayed in this

action and, as explained below, the Court finds that Horn sought and was provided relevant

information concerning his proposed affirmative defenses before fact discovery closed on

December 11, 2013. Accordingly, Horn cannot rely on the stay of expert discovery as a

justification for his delay in moving to amend his Answer.

Turning to Horn's proposed affirmative defenses, the Court finds that Horn failed to act

with the requisite diligence in asserting his defense that Plaintiff "lacks standing and lacks capacity

to bring suit for the causes of action alleged in [the] Complaint." Amended Answer ¶ 161.[5] Horn

asserts that he did not receive any information to support this defense until after the May 29, 2013

deadline to amend the pleadings has passed. The Court disagrees and finds that Horn learned

Freddie Mac owned the 41 Essex St. Loan *prior* to the date that the deadline to amend the

pleadings expired – and more than one year before Horn eventually moved to amend his Answer.

On May 17, 2013, nearly two weeks before the deadline to amend the pleadings, Plaintiff stated in

its responses to Horn's interrogatories that Freddie Mac is the owner of the 41 Essex St. Loan

---

[5]      For the purposes of its Rule 16(b) analysis, the Court construes Horn's proposed affirmative defense that Plaintiff "lacks standing and lacks capacity to bring suit" as a straight lack of capacity defense; namely, that Plaintiff, ██████████████████ cannot bring claims in federal court against Horn that arise out of the loans sold to Freddie Mac. *See* Horn Mem. at 5. To the extent that Horn seeks to assert that Plaintiff also lacks constitutional and/or prudential standing to pursue its claims, Horn can raise that issue any time, regardless of whether a standing defense is asserted in his Answer. *See, e.g., Thompson*, 15 F.3d at 248–49.

while Plaintiff retains and "owns the tort claims relating to the 41 Essex Street Loan." Pl.'s Resps. ¶ 21. Despite receiving this information on May 17, 2013, Horn did not seek leave to amend his Answer to assert a lack of standing/capacity defense until over one year later on June 18, 2014. *See Perfect Pearl*, 889 F. Supp. 2d at 457 ("A party fails to show good cause when the proposed amendment rests on information 'that the party knew, or should have known, in advance of the deadline.'") (quoting *Sokol*, 2009 WL 2524611, at *8). Given the more than one-year delay, the Court finds that Horn has not demonstrated the necessary diligence under Rule 16(b). *See In Re Agent Orange Prod. Liab. Litig.*, 220 F.R.D. 22 (E.D.N.Y. 2004) (citing *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) (two years and nine months "constitute[d] an undue delay.")); *see also Phaneuf v. Tenneco*, 938 F. Supp 112, 114 (N.D.N.Y. 1996); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (seventeen months).

Even if the Court were to conclude that Horn first became aware of Plaintiff's alleged ████████████████████████████████████████████████████████████████████████████ Horn has not even attempted to explain why he waited nearly seven months ███████████ ████████ to move to amend his Answer. As a preliminary matter, Horn cannot now be heard to complain that Plaintiff did not provide ███████████████████ until November 27, 2013 when Horn (i) moved to compel Plaintiff to produce other documents related to the Loans on October 4, 2013 but never sought production of ███████████████████; and (ii) failed to bring the issue to the Court's attention by the November 4, 2013 deadline to raise discovery-related issues, a deadline which the Court extended at Horn's request. Horn also made no mention of ██████████ ███████████ (or Plaintiff's failure to produce it) in his November 22, 2013 application (i) to extend the November 30, 2013 discovery deadline to take an additional Rule 30(b)(6) deposition, and (ii) to stay expert discovery. In any event, Horn does not dispute that he ultimately received

20

██████████████████ from Plaintiff on November 27, 2013. Nor does he dispute that on December 11, 2013, he deposed Teal, who further confirmed the existence of ████████ ████████ and described ███████████ as ████████████████████████████ ████████████████████████████. Consequently, the Court concludes that Horn had all of the evidence he needed to assert a lack of capacity defense by December 11, 2013 at the very latest, and yet he did not seek leave to amend until June 18, 2014. In light of this inexplicable delay, the Court finds that Horn failed to act diligently in moving to amend his Answer to assert this affirmative defense.

Horn also did not act diligently in asserting the affirmative defense of failure to mitigate damages. For one thing, Horn's reliance on the Tamsen report to support this defense is misplaced because, as Plaintiff points out, that expert report does not constitute an admission by Plaintiff that it "could have potentially lessened its damages by entertaining a short sale or loan modification." Horn Mem. at 3. Rather, the report merely describes foreclosure proceedings and short sales in general terms to explain why Plaintiff's expert believes that Horn's expert report does not accurately predict the FDIC's expected recovery from future foreclosures or short sales of the properties linked to the Loans. *See* Tamsen Report, Schleifer Decl., Ex. C.

Moreover, the Court finds it implausible that Horn was not aware of a possible mitigation defense or could not have raised that defense prior to receiving the Tamsen report on May 30, 2014. In his first set of interrogatories, Horn asked Plaintiff to describe its "interest" in each of the properties subject to the Loans and to "specifically set forth whether plaintiff still owns a mortgage on the property, whether it has been foreclosed, and/or whether the property has been sold." Pl.'s Resps. ¶¶ 7, 14, 21, 28, 35, 42. In its May 17, 2013 responses, Plaintiff stated that one of the properties had been sold in a short sale and that it would provide additional documentation related

to the disposition of all the properties. *Id.* ¶ 7. Indeed, Horn sought this documentation in his

October 4, 2013 letter motion, in which he asked the Court to compel Plaintiff to produce

discovery that went to Plaintiff's "damages" theory. *See* DE 39. Horn requested, as relevant here,

all documents relating to (i) "any mortgage foreclosure actions brought as a result of the

mortgages," and (ii) "the sale of any of the mortgaged properties, including but not limited to any

approval by plaintiff of short-sales." *Id.* The Court granted Horn's motion and set the deadline for

Plaintiff to produce these documents at October 16, 2013, which the parties later agreed to extend

to October 24, 2013. *See* Elec. Order, Oct. 8, 2013; Elec. Order, Oct. 15, 2013. Horn has never

claimed that Plaintiff failed to produce these documents, and the November 4, 2013 deadline for

him to raise that issue has long since passed. Accordingly, the Court finds that Horn sought and

received information related to his failure to mitigate defense well before Plaintiff served its expert

report on May 30, 2014, and that Horn therefore has not shown "good cause" for the Court to

modify the scheduling order for him to assert that defense more than a year after the deadline to

amend the pleadings had passed.

To some degree, Horn acknowledges his lack of diligence in seeking leave to amend by

citing this Court's decision in *Balk*. In his reply, Horn notes that, in *Balk*, "[t]he Court reasoned

that although the defendant did not exactly demonstrate 'good cause' for a modification of the case

management scheduling order, leave to amend should be granted." Horn Reply at 2; *see Balk*,

2013 WL 6990767, at *9. Horn urges the Court to reach that same conclusion here. However, this

case is distinguishable from *Balk* in several respects. In *Balk*, the parties were faced with an

ongoing challenge relating to a critical but uncooperative witness in Egypt which resulted in

continuing delays in the discovery process. *See* 2013 WL 6990767, at *10. Moreover, the Court

found in *Balk* that, although the defendant "ha[d] not been a model of diligence or compliance with

deadlines nor provided a robust 'good cause' argument," several factors weighed in favor of granting leave to amend, particularly that the defendant: (i) had previously "alluded" to its proposed defenses at oral argument before the Court; (ii) "uncovered new testimony" critical to its affirmative defenses following the deposition of the plaintiff and from the defendant's own witnesses; and (iii) asserted its intent to raise these defenses in its pre-motion letter submitted prior to its motion to amend. *Balk*, 2013 WL 6990767, at *9. None of these factors are present in this case. As noted, Horn obtained information to support his affirmative defenses before the expiration of the deadline to amend his pleading. Yet Horn did not adhere to that deadline, nor did he "allude" to the Court that he might seek to assert his proposed defenses before suddenly filing a proposed briefing schedule for his anticipated motion to amend on June 18, 2014. Horn also did not uncover evidence or testimony during discovery that was of sufficient import to excuse his lengthy delay in seeking to assert his proposed defenses. Horn underscores that, as in *Balk*, there is no evidence that he engaged in bad faith in the timing of his proposed amendments. *See* Horn Reply at 1; *Balk*, 2013 WL 6990767, at *10. However, bad faith is more appropriately considered under a Rule 15(a) analysis, which does not apply here in the absence of "good cause." *Chrebet*, 2014 WL 1836835, at *19 (quoting *Sokol Holdings*, 2009 WL 3467756, at *5) ("The standards of Rule 16(b) must be met first and cannot be short-circuited by an appeal to those of Rule 15.") (internal quotations omitted). Accordingly, *Balk* does not require that the Court conclude there is "good cause" in this case to modify the CMSO by granting Horn leave to amend his Answer.

In addition to a party's diligence, courts can consider other factors under Rule 16(b), such as prejudice to the non-moving party. *Kassner*, 496 F.3d at 244. The Court is not convinced that, as Horn contends, the FDIC should have known that he would raise these defenses and thus will not suffer any prejudice. In particular, although Horn asserted a culpable conduct defense in his

23

original Answer, that defense was not so all-encompassing as to put the FDIC on notice that Horn was alleging failure to mitigate damages as a defense. Mitigation is an affirmative defense which must be specifically pleaded in the answer, *see* Fed. R. Civ. P. 8(c), and cannot merely be incorporated into or considered part of a culpable conduct defense. *See generally Morgenstern*, 2009 WL 5103158, at *1. Thus, the Court finds that the FDIC can rightly "claim surprise" as to Horn's new defenses. *Compare Balk*, 2013 WL 6990767, at *10 ("Plaintiff cannot claim surprise with respect to [the defendant's] two defenses in light of his own admission that [defendant] alluded to them as early as January 11, 2012 at oral argument before Judge Bianco.").

That being said, Plaintiff has made a "minimal" showing of prejudice here. *Oppenheimer*, 2009 WL 2432729, at *4. Although the FDIC argues that it would be prejudiced by the assertion of these defenses because it had no opportunity to explore "the[ir] factual basis" during discovery, the FDIC does not venture what additional discovery (if any) would be necessary to eliminate this prejudice going forward. Nor has Plaintiff directly refuted Horn's assertion that his defenses would not require significant additional resources to address because the relevant information is in the FDIC's possession. At the time Horn sought leave to amend his Answer, fact discovery (including depositions) had been completed since December 11, 2013, and the parties were nearing completion of expert discovery. Although the parties have not yet moved for summary judgment, each party has filed a letter seeking a pre-motion conference before Judge Hurley, *see* DE 66-67, and no trial date has been set. Thus, the parties appear poised to commence dispositive motion practice and complete the pre-trial stage of these proceedings.

Ultimately, however, "the absence of prejudice alone is insufficient for a finding of good cause under Rule 16(b)." *Chrebet*, 2014 WL 1836835, at *16 (quoting *Hernandez v. Immortal Rise, Inc.*, No. 11-CV-4360, 2013 WL 1703529, at *2 (E.D.N.Y. Apr. 19, 2013)) (citing

24

*Shemendera v. First Niagara Bank N.A.*, 12-CV-178, 288 F.R.D. 251, 252 (W.D.N.Y. Dec. 27, 2012) ("*Kassner* does not excuse the moving party from having to demonstrate diligence in order to show 'good case'" (collecting cases)); *Estate of Ratcliffe v. Pradera Realty Co.*, No. 05-CV-. 10272, 2007 WL 3084977, at *4 (S.D.N.Y. Oct.19, 2007) (explaining that the absence of prejudice does not fulfill the good cause requirement of Rule 16(b)). Despite Horn's insistence that he is not seeking to re-open discovery in this case, additional discovery would likely be necessary to flesh out his additional affirmative defenses. Whether or not that discovery is significant, allowing Horn to assert his defenses at this time would further derail the trajectory of this case away from potential resolution and toward ongoing discovery. Consequently, the Court finds that Horn has failed to demonstrate the requisite diligence and lack of prejudice to the FDIC necessary for this Court to find that "good cause" under Rule 16(b) has been established. *See Chrebet*, 2014 WL 1836835, at *16.[6]

---

[6]     Since the Court concludes that Plaintiff has not established good cause for failing to comply with the deadline to amend the pleadings, the Court need not address whether Horn is entitled to leave to amend under Rule 15(a) or Plaintiff's argument that Horn's standing defense would be futile. *Chrebet*, No. 09 CV 4249, 2014 WL 1836835, at *21 (citing *Field Day, LLC v. Cnty. of Suffolk*, No. 04 Civ. 2202, 2013 WL 55697, at *2 (E.D.N.Y. Jan 3.2013) (holding that party "must first satisfy the 'good cause' standard under Rule 16 before an analysis under Rule 15 is conducted"); *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, No. 11-CV-726 CBA, 2012 WL 2458060, at *5 (E.D.N.Y. June 27, 2012), *aff'd*, No. 11 CV 726, 2012 WL 3306612 (E.D.N.Y. Aug. 13, 2012) ("If the party seeking the amendment satisfies the 'good cause' standard of Rule 16, the court then determines whether the movant also meets the liberal standards of Rule 15."); *Hernandez v. Immortal Rise, Inc.*, No. 11 Civ. 4360, 2013 WL 1703529, at *2 (E.D.N.Y. Apr. 19, 2013); *Rococo Assocs., Inc. v. Award Packaging Corp.*, No. 06 Civ. 0975, 2007 WL 2026819, at *2–3 (E.D.N.Y. July 9, 2007) (adopting Report and Recommendation)).

## V.   CONCLUSION

For all the foregoing reasons, Horn's motion to amend his answer is DENIED.  The parties are directed to appear in Courtroom 910 for a Pre-Trial Conference on April 15, 2015 at 2 p.m. The parties must file their Joint Pre-Trial Order on ECF by April 8, 2015.

**SO ORDERED.**

Dated: Central Islip, New York
       March 12, 2015

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge